## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-01492-KLM

FUEL AUTOMATION STATION, LLC,

     Plaintiff,

v.

FRAC SHACK INC.,

     Defendant.



## FRAC SHACK INC.'S MOTION TO DISMISS ALL CLAIMS

Pursuant to FED R. CIV. P. 12(b)(1) and (6), Frac Shack Inc. ("Frac Shack") moves to dismiss this case because this Court lacks subject-matter jurisdiction, and/or for Fuel Automation Station, LLC's ("FAS'") failure to show the minimum amount in controversy for original diversity jurisdiction, and/or FAS' failure to state a claim upon which relief can be granted. In the alternative, in light of a first-filed Canadian suit regarding Canadian parties and a Canadian patent, Frac Shack asks that the Court dismiss, or alternatively stay, this case under the Court's discretion to decline to hear a declaratory judgment request and/or for international comity.[1]

---

[1] Frac Shack highlighted cited portions of exhibits to help the Court find relevant passages.

## TABLE OF CONTENTS

I. INTRODUCTION ................................................................... 1

    A. FAS' Allegations Do Not Provide Subject Matter Jurisdiction ..................... 1

    B. In the Alternative, FAS Fails to State a Claim Many Times
    Over................................................................................ 2

    C. International Comity and DJ-Discretion Urge Dismissal ........................... 3

II. THIS COURT LACKS SUBJECT-MATTER JURISDICTION ........................... 3

    A. Count I Has Multiple Independent SMJ Infirmities ............................... 4

        1. FAS Has Not Shown It Has an Adverse Legal Interest to
        Frac Shack........................................................................ 4

        2. FAS Is Asking this Court to Litigate a Possible Defense
        for a Third Party for a Suit Pending in Another Country ................... 5

        3. FAS Is Proposing Hypotheticals for the Court ........................... 6

        4. FAS' Allegations Are Not of Sufficient Reality for SMJ ................. 7

    B. Counts II and III Allege No Concrete Injury in Fact............................ 8

    C. Counts I–III Fail to Demonstrate Amount in Controversy ......................... 9

III. FAS FAILS TO STATE CLAIMS UPON WHICH RELIEF CAN BE
GRANTED .......................................................................... 10

    A. Counts I and II Fail to Recite the "Unconditional Sale" Element
    for the Affirmative Defense of Patent Exhaustion ...............................10

    B. Count II Fails to Recite Elements for Breach of Contract.......................11

        1. FAS Does Not Allege Frac Shack had a Contractual Duty
        Frac Shack Did Not Perform ........................................... 11

        2. FAS Fails to Plead the U.S. Exhaustion Doctrine Applies
        to the Canadian Suit ................................................... 12

    C. Under Count III, There Can Be No Breach fo ██████████████
    ██████████████████████████████████ █ .........................13

        1. ████████████████████████████████████
        .................................................................. 13

        2. FAS Has Not Alleged A Plausible Basis that ████████
        ████████████████████████████ ................................ 16

    D. FAS Hinted-At Theories in Count III Have No Justifiable Basis
    in Law ...........................................................................17

        1. A Covenant Not to Sue Does Not Attach to Equipment ................. 17

        2. A Covenant Not to Sue Does Not Grant FAS Permission
        to License Third-Party ████████████ to Practice Frac
        Shack's Patents ....................................................... 18

        3. FAS Has Not Alleged Any Legally Cognizable Reason
        Frac Shack Is Responsible for KVA's Actions .......................... 19

IV. THE CANADIAN COURT SHOULD DETERMINE CANADIAN
MATTERS................................................................................................. 19

V. CONCLUSION ............................................................................................. 21

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Aetna Life Ins. Co. v. Haworth,*
  300 U.S. 227 (1937) ............................................................. 7

*AIDS Healthcare Found., Inc. v. Gilead Scis.,*
  890 F.3d 986 (Fed. Cir. 2018) .............................................. 5

*Akamai Techs., Inc. v. Limelight Networks, Inc.,*
  797 F.3d 1020 (Fed. Cir. 2015) ........................................... 8

*Altvater v. Freeman,*
  319 U.S. 359 (1943) ...................................................... 6, 20

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ........................................................... 14

*B. Braun Med., Inc. v. Abbott Labs.,*
  124 F.3d 1419 (Fed. Cir. 1997) ......................................... 11

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007) ........................................................... 14

*Bell v. Hood,*
  327 U.S. 678 (1946) ........................................................... 10

*Boesch v. Graff,*
  133 U.S. 697 (1890) ........................................................... 20

*BP Chems. Ltd. v. Union Carbide Corp.,*
  4 F.3d 975 (Fed. Cir. 1993) ................................................. 5

*Buell v. Sears, Roebuck and Co.,*
  321 F.2d 468 (10th Cir. 1963) ............................................ 10

*City of Santa Fe, N.M. v. Public Serv. Co. of N.M.,*
  311 F.3d 1031 (10th Cir. 2002) ......................................... 12

*Cont'l Cas. v. Nat'l Union Fire Ins. Co.,*
  812 F.3d 1147 (8th Cir. 2016) ........................................... 19

*Dept. of Labor v. Triplett,*
  494 U.S. 715 (1990) ............................................................. 6

*Endo Pharms. Inc. v. Actavis, Inc.,*
  746 F.3d 1371 (Fed. Cir. 2014) .................................... 14, 16

*Excelstor Tech. v. Papst Licensing GMBH,*
  541 F.3d 1373 (Fed. Cir. 2008) ........................................... 5

*Hilgraeve Corp. v. Symantec Corp.,*
  265 F.3d 1336 (Fed. Cir. 2001) .................................... 17, 18

*Impression Prods., Inc. v. Lexmark Int'l, Inc.,*
  137 S.Ct. 1523 (2017) ................................................... 10, 11

*Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee,*
  456 U.S. 694 (1982) ............................................................. 4

*Jackson-Shaw Co. v. Jacksonville Aviation Auth.*,
  510 F. Supp. 2d 691 (M.D. Fl. 2007) .................................................. 10

*Kokkonen v. Guardian Life Ins. Co.*,
  511 U.S. 375 (1994) ................................................................... 4, 9

*Laughlin v. Kmart Corp.*,
  50 F.3d 871 (10th Cir. 1995) ............................................................ 9

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
  572 U.S. 118 (2014) ..................................................................... 6

*Martin v. Franklin Capital Corp.*,
  251 F.3d 1284 (10th Cir. 2001) ......................................................... 9

*Md. Cas. Co. v. Pac. Coal & Oil Co.*,
  312 U.S. 270 (1941) ................................................................... 4, 7

*Microchip Tech. v. Chamberlain Grp.*,
  441 F.3d 936 (Fed. Cir. 2006) ........................................................ 4, 5

*Monsanto Co. v. Scruggs*,
  459 F.3d 1328 (Fed. Cir. 2006) ....................................................... 10

*Personalized Media Comms. v. Scientific-Atlanta, Inc.*,
  493 Fed. App'x 78 (Fed. Cir. 2012) .................................................... 5

*State Farm Fire & Cas. Co. v. Mhoon*,
  31 F.3d 979 (10th Cir. 1994) ......................................................... 21

*Steel Co. v. Citizens for Better Env't*,
  523 U.S. 83 (1998) ..................................................................... 8

*Tal v. Hogan*,
  453 F.3d 1244 (10th Cir. 2006) ....................................................... 12

*Teran v. GB Int'l*,
  652 Fed. App'x 660 (10th Cir. 2016) .................................................. 11

*Thomson v. Gaskill*,
  315 U.S. 442 (1942) ................................................................... 10

*TransCore, LP v. Elec. Transaction Consultants Corp.*,
  563 F.3d 1271 (Fed. Cir. 2009) ....................................................... 18

*United States v. Fruehauf*,
  365 U.S. 146 (1961) .................................................................... 7

*Warth v. Seldin*,
  422 U.S. 490 (1975) .................................................................... 6

*Western Elec. Co., Inc. v. Milgo Elec. Corp.*,
  450 F. Supp. 835 (S.D. Fl. 1978) ..................................................... 20

*Zila, Inc. v. Tinnell*,
  502 F.3d 1014 (9th Cir. 2007) ..................................................... 12, 20

**Statutes**

28 U.S.C. § 1332(a) ...................................................................... 9

28 U.S.C. § 2201(a) ...................................................................... 4

35 U.S.C. § 271(a) ................................................................................ 8

**Rules**

Fed. R. Civ. P. 12(b)(1).......................................................................... i

Fed. R. Civ. P. 12(b)(6)..................................................................... i, 14

**Other Authorities**

Black's Law Dictionary (5th ed.1979) ......................................... 10

# I. INTRODUCTION

On July 13, 2019, Frac Shack Inc. ("Frac Shack") entered a contract ("Agreement") with Atlas Oil Company and Fuel Automation Station, LLC ("FAS"; collectively "Atlas") that included consideration that Frac Shack would agree not to sue certain parties for infringement of certain patents.

On March 24, 2020, Frac Shack, a Canadian company, and Frac Shack International, a Canadian company, sued KVA Fuel Services LTD. ("KVA"), a Canadian company, in Canada, regarding infringement of Canadian Patent No. 2,693,567 ("CA '567 Patent" or "Canadian Patent"), for activities occurring in Canada.

From the complaint, it appears that FAS is of the impression that through the terms of the Agreement, and "due to" the federal common law defense of "patent exhaustion," Frac Shack "cannot sue" any persons FAS considers its "customers, lessees, or users" of "FAS Equipment." Via a declaratory judgment ("DJ") request, Count I, FAS now asks the Court to proclaim that FAS' interpretation of the contract/law is correct.

FAS also asserts two breach of contract actions: that Frac Shack breached the Agreement by (1) bringing suit against KVA and "due to exhaustion . . . of patent rights," Count II, and (2) bringing suit against KVA and "Due to [Frac Shack's] Engaging FAS [in a proceeding against KVA based on Frac Shack's patent rights] Via [FAS'] KVA Relationship," Count III.

## A. FAS' Allegations Do Not Provide Subject Matter Jurisdiction

None of FAS' allegations confer this Court with subject matter jurisdiction ("SMJ"). Count I does not confer this Court with SMJ, at least because: (1) FAS has not shown Frac Shack and FAS have an adverse legal interest; (2) FAS is asking the Court to declare third-party rights; (3) the Court must engage in multiple hypotheticals to reach a

conclusion; and (4) the threadbare allegations regarding a future possible assertion of the patent infringement defense of "exhaustion" by a third party are indefinite and not "live."

Counts II and III are insufficient to provide this Court with SMJ, because, at least, FAS has only alleged that the *KVA* suit and FAS' belief that KVA intends to seek to join FAS "is negatively affecting FAS' relationships," and such immeasurable and circumspect allegation is not a concrete injury in fact.

Additionally, all Counts are deficient because FAS only says this Court has original diversity jurisdiction, not federal question jurisdiction, and FAS has not made a good faith claim that FAS' case meets the amount in controversy requirement to invoke diversity jurisdiction.

### B.   In the Alternative, FAS Fails to State a Claim Many Times Over

For both the DJ Count I and Breach of Contract Count II "due to exhaustion," FAS has not recited an essential element for exhaustion to apply: that there was an unconditional sale of a patented item.  FAS only says it sold services *related to* its equipment, and *leased*, or *agreed to lease*, equipment.  Without reciting an unconditional sale, FAS has not alleged a legally cognizable application of patent exhaustion.

In addition, for Count II, alleged breach of contract due to the *KVA* suit and "due to exhaustion," FAS (1) does not recite Frac Shack has a contractual duty that could have been breached, because "exhaustion" is an extra-contractual judicial creation; and (2) FAS does not recite the U.S. doctrine of exhaustion is even available in the Canadian suit.  For these additional reasons, FAS' allegations regarding Count II are triply deficient.

For Count III, the alleged breach of contract for suing KVA for infringing the Canadian Patent because KVA has a "relationship" with FAS, FAS has not alleged, or *plausibly* alleged, two facts sufficient to make out a claim:  (1) ██████████████

███████████████████████████████████████████████████████; and (2)

███████████████████████████████████████████████████████████

██████

Also for Count III, FAS' implied premises are incorrect as a matter of law. First, FAS says that FAS' equipment was "covered" by the Agreement. But Frac Shack's covenant is that██████████████████████████████████████████████████████████ ███████████████████████████████████████. Second, FAS says that FAS is allowed to give third-parties permission to use FAS' equipment "on behalf of FAS" (i.e., FAS says it has the equivalent of the power to grant third-parties a license to use Frac Shack's Canadian Patent). ████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████. Third, FAS suggests Frac Shack should be held responsible for KVA's possible future attempt to join FAS in the Canadian lawsuit. But KVA is a third-party with no relationship to Frac Shack, other than being a defendant Frac Shack sued, so KVA's independent actions are not Frac Shack's, and FAS has not alleged any cognizable reason Frac Shack should be legally held responsible for KVA's actions.

### C. International Comity and DJ-Discretion Urge Dismissal

Irrespective of FAS' many layers of jurisdiction and cause of action infirmities, this Court should additionally dismiss or stay this action to allow the first-filed Canadian court to address purely Canadian issues and law—including infringement of a Canadian patent that this Court may not decide—due to international comity and/or this Court's discretion to not hear DJ requests.

## II. THIS COURT LACKS SUBJECT-MATTER JURISDICTION

The burden of establishing this Court has SMJ rests upon the party asserting SMJ.

*Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994) (citations omitted). A settlement agreement that produced a stipulation of dismissal does not confer this Court with SMJ. *Id.* at 378. The complaint does not implicate any failure to abide by a Court order, because this Court did not retain jurisdiction, or adopt any of the Agreement's terms. *Id.*; *see also Frac Shack Inc. v. Atlas Oil Co.*, 1:16-cv-02275-STV (filed Sept. 10, 2019) [Dkt. 152] ("[T]he case was dismissed with prejudice as of the entry of [Joint Motion to Dismiss]. No order of dismissal is necessary."). Parties cannot confer SMJ on this Court, and are never estopped from challenging, and cannot waive, SMJ. *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).

## A.   Count I Has Multiple Independent SMJ Infirmities

Silently invoking the DJ statute, 28 U.S.C. § 2201(a), Count I of FAS' Complaint asserts that



[#1 ¶38 (emphasis added); Prayer para. A], and asks that the Court declare

such that Frac Shack *cannot sue* any customers, lessees, or users of that FAS Equipment" [*id.* ¶46 (emphasis added)].

## 1. FAS Has Not Shown It Has an Adverse Legal Interest to Frac Shack

First, to have SMJ under the DJ statue requires "a substantial controversy, between parties having adverse legal interests." *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941). A "legal interest" means "that there [is] an underlying legal cause of action that the declaratory defendant could have brought or threatened to bring, if not for the fact that the declaratory plaintiff has preempted it," *Microchip Tech. v. Chamberlain Grp.*, 441 F.3d 936, 942–43 (Fed. Cir. 2006). But Frac Shack cannot bring

a "claim" of "lack of exhaustion" against FAS, because "patent exhaustion is a defense to patent infringement, not a cause of action," simply one of many "defenses to hypothetical claims of patent infringement." *Excelstor Tech. v. Papst Licensing GMBH*, 541 F.3d 1373, 1376 (Fed. Cir. 2008). Because FAS has not identified a legal claim FAS believes Frac Shack could have brought against FAS before the DJ claim, as required, this Court has no SMJ. *Id.* at 943.

At best, FAS intimates that one "prospective lessee" [#1 ¶42] decided not to lease FAS Equipment due to threat of suit [*id.* ¶43] and other "potential FAS Equipment customers" may do the same [*id.* ¶33], but that FAS "perhaps would economically have benefited if its customers had no fear of suit . . . alone . . . cannot form the basis of an 'actual controversy' under the Declaratory Judgment Act." *Microchip Tech.*, 441 F.3d at 943 (citation omitted); *see also BP Chems. Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 980 (Fed. Cir. 1993) (finding DJ plaintiff's desire to assure its licensees insufficient to confer SMJ); *Personalized Media Comms. v. Scientific-Atlanta, Inc.,* 493 Fed. App'x 78, 84 (Fed. Cir. 2012) (Myer, J., concurring) ("[DJ Plaintiff's] vague allegation that its hypothetical relationships with unnamed 'prospective licensees' might be damaged because of uncertainties over the scope of its licensing agreement with [DJ Defendant], is not the type of 'specific live grievance' . . . necessary to support the exercise of declaratory judgment jurisdiction."), *accord AIDS Healthcare Found., Inc. v. Gilead Scis.*, 890 F.3d 986, 992–93 (Fed. Cir. 2018).

### 2. FAS Is Asking this Court to Litigate a Possible Defense for a Third Party for a Suit Pending in Another Country

Second, FAS is asking the Court to determine whether a defense would be available to *third-parties*, "customers, lessees, or users." "Ordinarily, of course, a litigant

must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties. . . . even when the very same . . . act that affects the litigant also affects a third party." *Dept. of Labor v. Triplett*, 494 U.S. 715, 721 (1990) (citations and internal quotes omitted). This is so because—at least "closely related to Art. III concerns"[2]—"the courts would be called upon to decide abstract questions . . . even though judicial intervention may be unnecessary to protect individual rights." *Warth v. Seldin*, 422 U.S. 490, 500 (1975). This concern applies here, where DJ Plaintiff is asserting a hypothetical defense a third-party might raise elsewhere, and there is no pleading that the third-parties are not capable of asserting the defense on their own.

### 3. FAS Is Proposing Hypotheticals for the Court

Third, an affirmative defense cannot stop a plaintiff from suing, so when FAS asks the Court to declare Frac Shack "cannot sue" [#1 ¶46], FAS is really asking that the Court declare that a hypothetical patent infringement suit would be defeated by this patent exhaustion affirmative defense. That is, *if* Frac Shack sued an entity FAS considered a "customer," "lessee," or "user," and *if* the Court found infringement of the patent,[3] and *if* the Court found the U.S. defense available, and *if* in this imagined suit where infringement was found, the doctrine applied, and the third-party defendant asserted the affirmative defense, would the affirmative defense be successful? This is "an opinion advising what the law would be upon a hypothetical state of facts," that Federal courts do not provide.

---

[2]  This issue may fall under the rubric of "prudential standing" rather than SMJ. *But see Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 n.3 (2014) (casting doubt that the "prudential standing" categorization is correct).

[3]  Courts do not decide the affirmative defense without first finding infringement. *Altvater v. Freeman*, 319 U.S. 359, 363 (1943).

*Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–41 (1937).

**4. FAS' Allegations Are Not of Sufficient Reality for SMJ**

Fourth, FAS' requested declaration, that *all* leases and sales, of whatever possible infinite varieties of terms and conditions, would entitle any "customer," "lessee," or "user" to successfully assert the patent exhaustion defense [*see* #1 ¶46 & Prayer at para. A] is such an abstract request as not to provide the Court a controversy "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment," *see Md. Cas. Co.*, 312 U.S. at 273. Indeed, FAS' request is not limited to any particular entity in the complaint, and FAS has not even defined "users," "customers," and "lessees," or specified what distinguishes one from another.

For instance, FAS' threadbare recitals do not allege facts providing a concrete case admitting of an immediate and definitive determination of the legal rights to warrant the issuance of a declaration that Frac Shack "cannot sue" the one named U.S. third party "potential customer," REV Energy Services, LLC ("REV"), much less the sweeping declarations FAS is seeking. *United States v. Fruehauf*, 365 U.S. 146, 157 (1961) (noting Federal Courts refuse to give "advance expressions of legal judgment upon issues which remain unfocused"). FAS does not allege FAS leased "FAS Equipment" to REV, saying only that FAS entered some "agreement to lease" [*id.* ¶27], without alleging the agreement was written, more than exploratory, consummated, or—better—providing the agreement. Indeed, as to recited parties, except to characterize REV as a "prospective lessee" [*id.* ¶42], FAS puts forth no details regarding REV's relationship to FAS for the Court to determine if any aspect of the Agreement could be implicated by Frac Shack's alleged activities [*see* #3–1 at §2 & p.1].

As to the REV "agreement," FAS puts forth no factual allegations of definite terms

that the Court would need to assess to determine the viability of a patent suit. For example, FAS does not specify what country the actions were contemplated to take place, but, because patent infringement is territorially circumscribed, *see* 35 U.S.C. § 271(a), *where* a party is using a machine or implementing a method matters. As another example, FAS does not specify which party was to do what, but, because only in certain instances can actions of one party be attributed to another when considering patent infringement, *see Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1023 (Fed. Cir. 2015), *who* is implementing steps of a method, and *what the relationship between the actors is*, matters.

As to the alleged Frac Shack communications to REV that FAS characterizes as a "threat" [*id.* ¶¶27–30], FAS does not provide what was specifically said, or even set forth what patent or patents were supposedly asserted, a minimum if this Court is to determine if a patent even falls within Frac Shack's covenant [*see* #3–1 §2 & p.1.]

As to the category of unnamed "potential" customers [#1 ¶44], FAS only makes an "information and belief" allegation regarding even less-specific "threats"—simply characterizing them as "similar." FAS does not appear to put forth any allegations or facts regarding the category of "users," separate from "lessees."

## B. Counts II and III Allege No Concrete Injury in Fact

For this Court to have SMJ over FAS' non-DJ requests, FAS must show injury in fact, causation, and redressability, *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 103–04 (1998), but FAS fails to at least show an injury in fact. An "injury in fact" is a harm suffered that is concrete and actual or imminent, not conjectural or hypothetical. *Id.*

First, FAS' allegations are not concrete. FAS only made the unsupported allegation that "Frac Shack's suit of KVA is negatively affecting FAS's relationships with

its customers and business partners." [#1 ¶55.]   FAS' subjective feeling that its relationship with others is not as positive as it was pre-*KVA* suit is unquantifiable, the opposite of concrete.

Second, FAS' allegations are both conjectural and hypothetical.   FAS' "on information and belief" statement that "KVA intends to seek to join FAS as a defendant in the Canadian lawsuit" [#1 ¶24] is conjecture regarding future injury based upon FAS' guess of KVA's *intent* rather than *actions*.   And FAS' claim that KVA may only "seek to join FAS" is hypothetical in that it asks the Court to imagine that KVA does seek to join FAS, and is ultimately successful in doing so, without even alleging or otherwise setting forth for the Court's consideration what the legal basis for KVA's joinder would be, or whether KVA's joinder would be legal, appropriate, and successful.

### C.   Counts I–III Fail to Demonstrate Amount in Controversy

Plaintiff only alleges diversity jurisdiction [#1 ¶7],[4] has only asked for an award of unspecified "monetary damages" [*id.* at p. 12 at para. B], and has failed to make a good faith claim the amount in controversy exceeds the sum of $75,000, exclusive of interest and cost, as required, 28 U.S.C. § 1332(a).   Facts establishing federal diversity jurisdiction "must be affirmatively established on the face of . . . the petition,"   *see Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995), and the burden is on the Plaintiff to establish by a preponderance of the evidence that the jurisdictional amount is satisfied, *Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1290 (10th Cir. 2001).   "The policy of the statute conferring jurisdiction on district courts in diversity of citizenship cases calls for its strict

---

[4]   An action to enforce a settlement agreement is a claim for breach of contract, not implicating a federal question.   *Kokkonen*, 511 U.S. at 377.

construction." *Buell v. Sears, Roebuck and Co.*, 321 F.2d 468, 471 (10th Cir. 1963) (citing *Thomson v. Gaskill*, 315 U.S. 442 (1942)). "The bill must be dismissed if the evidence in the record does not support the allegations as to jurisdictional amount." *Thomson*, 315 U.S. at 446.

## III. FAS FAILS TO STATE CLAIMS UPON WHICH RELIEF CAN BE GRANTED

While the Court should only determine that the allegations in the complaint do not state a ground for relief after the Court assures itself that it has SMJ, *Bell v. Hood*, 327 U.S. 678, 682 (1946), FAS' pleadings have failed to make out the elements of a claim and are legally incorrect.

### A. Counts I and II Fail to Recite the "Unconditional Sale" Element for the Affirmative Defense of Patent Exhaustion

FAS' pleadings do not allege there has been an "*unrestricted* first sale" of a patented article, a necessary element for the defense of exhaustion. *Monsanto Co. v. Scruggs*, 459 F.3d 1328, 1335–36 (Fed. Cir. 2006). An unrestricted sale requires "passing title to a product" such that the buyer is the unrestricted "owner" of the patented good. *Impression Prods., Inc. v. Lexmark Int'l, Inc.*, 137 S.Ct. 1523, 1534 (2017). FAS puts forth no allegations regarding actual or anticipated sales of "FAS Equipment." FAS only alleges that it offered to sell Ovintiv Canada ULC ("Ovintiv") "goods and services *related to* the FAS Equipment" [#1 ¶20 (emphasis added)], which is not a sale *of* "FAS Equipment," assumed to be the patented article, and has not provided an Ovintiv agreement to support this allegation. FAS' allegation that it leased equipment to KVA [*id.* ¶27] is also insufficient, because, by definition, a lease is for a "limited term with conditions attached," *Jackson-Shaw Co. v. Jacksonville Aviation Auth.*, 510 F. Supp. 2d 691, 720 (M.D. Fl. 2007) (ultimately quoting Black's Law Dictionary 829 (5th ed.1979)), not a sale

passing title, much less an "unrestricted" one, *B. Braun Med., Inc. v. Abbott Labs.*, 124 F.3d 1419, 1426 (Fed. Cir. 1997) ("This exhaustion doctrine, however, does not apply to an expressly conditional sale or license."), and has not provided the KVA agreement to support this allegation.

Therefore, because FAS has not alleged that FAS has sold a product that embodies covenanted patents in an unrestricted manner such that Ovintiv, KVA, REV, or any other buyer is the title-holder and unrestricted owner of that product, FAS fails to allege the elements of the defense (not a cause of action).

## B. Count II Fails to Recite Elements for Breach of Contract

### 1. FAS Does Not Allege Frac Shack had a Contractual Duty Frac Shack Did Not Perform

At the most basic level, a breach of contract action must provide some "duty arising from a contract," *Teran v. GB Int'l*, 652 Fed. App'x 660, 675 & n.17 (10th Cir. 2016); however, FAS' pleading with respect to Count II is missing this critical element. Instead of alleging that Frac Shack failed to perform some contractual duty, Count II makes the non-sensical assertion that Frac Shack breached "Due to Exhaustion." [#1 § V.]

First, exhaustion imposes no "duty" on Frac Shack. Exhaustion is merely a "defense[] to hypothetical claims of patent infringement" an accused infringer may invoke. *Excelstor*, 541 F.3d at 1376.

Second, exhaustion does not "arise from a contract." The availability of patent exhaustion arises automatically from federal common law, *Impression Prods.*, 137 S.Ct. at 1526, and is a wholly judicial creation, *Atherton v. FDIC*, 519 U.S. 213, 218 (1997). And FAS has not pled that Frac Shack made some agreement regarding the doctrine [*see* #1], because Frac Shack has not.

Therefore, even if FAS could show that the U.S.-based common law affirmative defense of patent exhaustion was available to KVA in its Canadian suit—it cannot, and does not try (see below)—and FAS could show that the elements of exhaustion have been met—it has not and cannot (see above)—the availability, application, or even successful defense of "patent exhaustion" would not and could not cause a breach of *contract*, because Frac Shack has not *contracted* with FAS regarding patent exhaustion, so Frac Shack has no obligation with respect to the defense Frac Shack could fail to fulfill.

### 2. FAS Fails to Plead the U.S. Exhaustion Doctrine Applies to the Canadian Suit

For Count II, FAS' complaint also fails to recite or explain why how the U.S.-legal doctrine of patent exhaustion could exhaust Frac Shack's Canadian patent rights in the referenced Canadian *KVA* case. [*See* #1 ¶22.] FAS' allegations concern a "Canadian lawsuit" [*id.* ¶24] against third-party Alberta Corporation, KVA Fuel Services Ltd. [Ex. A at 2], by Canadian plaintiffs [#1 ¶5] for infringement of a Canadian patent [*id.* ¶22], through activities occurring in Canada [Ex. B, Statement of Claim, *Frac Shack Inc. et al. v. KVA Fuel Services Ltd*, No. T-415-20 p. 13 ¶38 (Ca. Fed. Ct.)].[5] In fact, U.S. common law generally does not apply to a foreign patent. *See, e.g.*, *Zila, Inc. v. Tinnell*, 502 F.3d 1014, 1023–24 (9th Cir. 2007) (finding common law contract prohibition against royalties beyond expiration date not applicable to Canadian patent).

---

[5]  The Court may consider materials beyond the complaint if the documents are central to the plaintiff's claims, referred to in the complaint, and the parties do not dispute their authenticity. *See City of Santa Fe, N.M. v. Public Serv. Co. of N.M.*, 311 F.3d 1031, 1035 (10th Cir. 2002). The Court may also take judicial notice of undisputed court documents and matters of public record. *See Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006).

Indeed, FAS' Count I, asking that Court declare "Frac Shack Cannot Sue FAS's U.S. Users or Customers" [#1 §IV (emphasis added)] and corresponding Prayer referencing "███████████████████████████" [*id.* para. A (emphasis added)], indicates that FAS sometimes understands exhaustion is limited to defend against U.S. patent infringement allegations, and undermines its Count II "cause of action," because, it is Frac Shack's *Canadian* patent rights that are being asserted in the *KVA* lawsuit, not its U.S. patent rights.

Therefore, for Count II, FAS fails to state a second element, a charge of *U.S.* patent infringement for the defense (not a cause of action) of patent exhaustion to be applicable.

### C. Under Count III, There Can Be No Breach for ███████████ ████████████████████████████████████████████

Under Count III, for Frac Shack to breach the Agreement by filing suit against KVA for infringing the CA '567 Patent, (1) the CA '567 Patent must be included in the group of patents Frac Shack agreed not to assert; and (2) KVA must be in the group of people that Frac Shack agreed not to sue for infringing the specified group. The pleadings ████████ ████████████████████████████████████████████████████████████ ████████

### 1. ████████████████████████████████████████████████████

████████████████████████████████████████ The Agreement among Frac Shack and Atlas limits the scope of Frac Shack's covenant not to sue to ████████████████████████████████████████████████████████████ ████████████████████████████

████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████



A similar situation occurred in *Endo Pharms.*, where the licensee alleged "claiming priority to" specific patents meant patents that claimed priority to a common prior application with the same subject matter as the licensed patents were also licensed. *Endo Pharms. Inc. v. Actavis, Inc.*, 746 F.3d 1371 (Fed. Cir. 2014). The Federal circuit explained that when patents "do not cross-reference" licensed patents, they "do not 'claim priority to' any of the licensed patents," "a prerequisite for the license." *Id.* at 1374–75.

The CA '567 Patent shows no cross reference to a priority claim anywhere.[7] [Ex. B at 16.] Rather, the earliest U.S. patent, number 9,346,662 ("'662

---

[6] FAS makes the unsupported legal conclusion that it does [#1 ¶61]; however, step one in a 12(b)(6) analysis is to ignore such "'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[7] Priority claims would be shown on the face of the patent following the internationally agreed number for the identification of bibliographic data ("INID") code 30 for "priority details."

Patent"), claims priority to U.S. Provisional Application 61/305,320 ("'320 Provisional App.") [Ex. C p. 3 at (60)[8]] and the CA '567 Patent [*id.* at (30)], *but there is no priority claim the other way.*

Indeed, the CA '567 Patent was filed Feb. 16, 2010 [Ex. B p. 16 at (22)], *before* the U.S. Patent and Patent Applications, so it is literally impossible for the CA '567 Patent to have "priority claims to" these *subsequently* filed U.S. patents and patent applications.[9]

[*See* Ex. G at 4–5, Canadian Patent Act § 28.4(1)–(2) ("[A]n applicant for a patent in Canada may request priority in respect of the application on the basis of one or more *previously* regularly filed applications . . . The request for priority . . . must inform the Commissioner of the filing date, country or office of filing and number of each *previously* regularly filed application on which the request is based.") (emphasis added).] The relevant filing dates and priority relationships are illustrated as follows:

---

[8] Code 60 is the INID code for "reference to other legally related domestic document(s)."

[9] The '320 Provisional App. was filed Feb. 17, 2010 [Ex. D p. 2]; the '662 Patent was filed Feb. 16, 2011 [Ex. C p. 3 at (22)]; U.S. Patent 10,029,906 was filed May 2, 2016 [Ex. E p. 2 at (22)]; and U.S. Application 15/997,340 (published as Publication US2019/106316 A1) was filed June 4, 2018 [Ex. F p. 2 at (22)].



**2. FAS Has Not Alleged A Plausible Basis that** ███████████████
█████████████████████████████████

████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

███████████████████ and FAS has not alleged it is.  Frac Shack only entered into a limited

agreement not to sue ███████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

[████████████████████████████████]

[████████████████████████████████]

[████████████████████████████████]

[████████] FAS only alleges that KVA had a "relationship" with FAS [#1 § VI], and that "relationship" appears to be that of a third-party non-employee "contractor" [*id.* ¶21]. But, as shown, [████████████████████████]

[████████████████████████████████]

[████████████████████████████]

### D.   FAS Hinted-At Theories in Count III Have No Justifiable Basis in Law

While FAS' complaint is less than clear, FAS hints at other possible bases that KVA would be covered by the Agreement, [████████████████████] However, the implicit contentions are legally meritless.

### 1. A Covenant Not to Sue Does Not Attach to Equipment

First, FAS asserts that the "equipment" was "covered under the covenant not to sue." [#1 ¶63.]  But a covenant not to sue is "nothing more than a promise by the licensor not to sue the *licensee*."[10]  *Hilgraeve Corp. v. Symantec Corp.*, 265 F.3d 1336, 1346 (Fed.

---

[10]   While the Agreement specifically specifies that Frac Shack is providin [████]

[████████████████████████████████]

Cir. 2001) (emphasis added).  That is, the promise is to persons and entities (those Frack

Shack agreed to refrain from otherwise suing for patent infringement), and is not bound

to, and does not "run with," equipment. █████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

## 2. A Covenant Not to Sue Does Not Grant FAS Permission to License Third-Party ████████████ to Practice Frac Shack's Patents

Second, ███████████████████████████████████████████████████████████████

██████████████████████████████████████████ FAS asserts that KVA

was "acting on behalf" of FAS, and, therefore, was "covered under the covenant not to

sue." [#1 ¶63.]  That is, FAS impliedly asserts that FAS may grant permission to others,

████████████████████████████████████████████████████████████████████████████

██████████████████████████████████, to practice the Canadian Patent.  But,

assuming for the sake of argument ████████████████████████████████████████████

██████████████████████████████████████████ Frac Shack's covenant

to FAS gave FAS no more rights than a non-exclusive licensee,[11] and through Frac

Shack's covenant, FAS "never acquired a transferable license to practice the [patent],

and . . . therefore could not sub-license the [patent]." *Id.*; *see also id.* ("The covenant not

to sue in paragraph 2.2 does not grant a *transferable* license to the patent.").  Therefore,

---

████████████████████████████████████████████████████████████████████████████

████████ when considering FAS' ability to unilaterally expand Frac Shack's promise
to cover other parties, FAS is treated as a non-exclusive licensee, *TransCore, LP
v. Elec. Transaction Consultants Corp.*, 563 F.3d 1271, 1276 (Fed. Cir. 2009).

[11]  See n.10.

even if ██████████████████████████████████████████ and KVA was "acting on FAS' behalf," ████████████████████████████████████████████████ ██████████████████████████████████ [*see* #3–1 §2], and KVA cannot unilaterally expand the persons who Frac Shack agreed it would not sue (i.e., do the equivalent of granting a license to practice Frac Shack's Canadian Patent).

### 3. FAS Has Not Alleged Any Legally Cognizable Reason Frac Shack Is Responsible for KVA's Actions

Count III is also deficient in that even if FAS' speculation regarding third-party KVA's intent "to seek to join FAS as a defendant in the Canadian lawsuit" [#1 ¶24] occurred and was successful, such joinder would not be due to *Frac Shack's* actions, but third-party *KVA's*. That some third-party may, perhaps wrongly, seek to join, or does join, FAS in a Canadian lawsuit, is not *Frac Shack* suing FAS, or *Frac Shack* otherwise engaging[12] FAS ████████████████████████████████████████████

██████████████ [*see* #3–1 §2], but *KVA's* engagement of FAS in a foreign legal proceeding. FAS has not alleged any reason why Frac Shack should be held liable for KVA's independent third-party action. *See Cont'l Cas. v. Nat'l Union Fire Ins. Co.*, 812 F.3d 1147, 1151–52 (8th Cir. 2016) (explaining that the party a plaintiff sues matters, and a plaintiff does not breach an agreement not to seek costs from party A when plaintiff sues party B for costs, even if party A has an obligation to reimburse party B's paying of plaintiff's costs).

## IV. THE CANADIAN COURT SHOULD DETERMINE CANADIAN MATTERS

Irrespective of whether this Court find it has SMJ, FAS has shown the minimum

---

[12]  See #1 Section VI ("Due to Engaging FAS").

amount in controversy for diversity jurisdiction, or Plaintiff has stated a cause of action, this Court should still dismiss, or alternatively stay, this matter pending the first-filed Canadian suit under international comity and/or this Court's DJ discretion.

Regarding Count II, Frac Shack cannot seek redress for KVA's infringement of Frac Shack's Canadian Patent before this Court or anywhere in the United States. *Western Elec. Co., Inc. v. Milgo Elec. Corp.*, 450 F. Supp. 835, 836 (S.D. Fl. 1978) ("It is settled that patents granted by different countries represent separate and distinct legal rights which should be controlled by the country granting the right.") (citing *Boesch v. Graff*, 133 U.S. 697 (1890)). And to get to FAS' alleged purely affirmative defense of "exhaustion" [#1 at § V ("Due to Exhaustion") & ¶49 ("[u]nder the theory of patent exhaustion")] requires a determination of whether KVA infringes the CA '567 Patent, because, absent first finding infringement, exhaustion is moot, and deciding the issue would be hypothetical. *Altvater*, 319 U.S. at 363. Therefore, resolving the question of whether KVA infringes the CA '567 Patent *must* be heard in Canada. *See Stein Assocs., Inc. v. Heat & Control, Inc.*, 748 F.2d 653, 658 (Fed. Cir. 1984) ("Only a British court, applying British law, can determine validity and infringement of British patents.") And the ancillary question of whether exhaustion is available to the Canadian defendant, and rendering a judgment as to whether the Canadian defendant is ultimately successful, is also for the Canadian court to decide under Canadian law. *See Zila*, 502 F.3d at 1024 n.6 (noting whether a U.S. common law defense has applicability to a Canadian patent is "a matter of Canadian law").

It appears Count I's DJ request as put forth by FAS would be applicable to Frac Shack's suit against KVA as set out in Count II [#1 ¶¶46, 49, 54 & Prayer para. C (asking

for "[a]n Order instructing Frac Shack and Frac Shack International to dismiss the Canadian lawsuit against KVA")]; therefore, arguments for dismissal/stay under Count II are equally applicable to Count I.

Likewise, Count III relies upon KVA's "inten[t] to join FAS as a party into the Canadian lawsuit"; however, whether KVA may properly join FAS in the Canadian suit in the first instance is, again, a matter of Canadian law, and should be heard in Canada. *See* Ex. H pp. 3–6 (providing Canadian federal rules regarding joinder).

Additionally, this Court should discretionarily decline Count I's request for a declaration. First, given that FAS alleges it could be made a party to the Canadian suit [#1 ¶64], FAS' could "obviate[e] any need for an independent declaratory action and provid[e] a simpler and more efficient resolution" in Canada. *See State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 984 (10th Cir. 1994). Second, FAS' suit here is an obvious "attempt to race with [the opposing party] to obtain a favorable final judgment" in this Court through declaration of an affirmative defense, and has the potential to create unnecessary friction between this and Canadian courts, which should be avoided. *See Grand Trunk R. Co. v. Consol. R. Corp.*, 746 F.2d 323, 326 (6th Cir. 1984); *accord Mhoon*, 31 F.3d at 986.

## V. CONCLUSION

FAS has come to this Court seeking judicial confirmation of FAS' interpretation of the Agreement and the law, and to intervene in Frac Shack and Frac Shack International's suit against another party in another country, on the flimsiest of pretexts. It has only recited goods and services "related to" the presumptive patented goods, FAS' "belief," third parties' "intent," "similar conduct," an "agreement to lease" (not a lease), "potential customers," third-party rights, federal common law in the abstract, unspecified damages

"for negatively affecting FAS's relationships," etc. Without rehashing the numerous problems laid out above, the complaint simply does not rise to the level of a case and controversy to confer this Court with SMJ. And, assuming for the sake of argument it did, FAS' "causes of action" are missing required elements or legally baseless. FAS also failed to show the necessary amount in controversy for diversity jurisdiction. Ignoring this Court's lack of SMJ, diversity jurisdiction, and FAS' failure to state a claim, the Court should still dismiss this case and let the first-filed Canadian court hear the Canadian issues, including those this Court cannot address. Defendant asks that the Court dismiss this matter in its entirety.

Dated: _____August 25, 2020_____

Respectfully submitted,
s/ Gary J. Fischman_____
**Gary J. Fischman**
FISCHMAN LAW PLLC
710 N. Post Oak Rd. Suite 105
Houston, Texas 77024
Tel: (713) 900–4924
fischman@fischmaniplaw.com

s/ Joshua S. Wyde_____
**Joshua S. Wyde**
THE LAW OFFICE OF JOSHUA S WYDE
710 N. Post Oak Rd. Suite 105
Houston, TX 77024–3808
Tel: (713) 482–1916
Fax: (713) 466–6563
jwyde@wydelegal.com

Attorneys for Frac Shack Inc.