IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-01492-KLM

FUEL AUTOMATION STATION, LLC,

       Plaintiff,

v.

FRAC SHACK, INC,

       Defendant.

_____/

**FUEL AUTOMATION STATION LLC'S RESPONSE TO FRAC SHACK
INC.'S MOTION TO DISMISS**

# TABLE OF CONTENTS

I.   Introduction ........................................................................................................... 1

II.   Factual Background ............................................................................................. 2

III.   Legal Authority.................................................................................................. 3

  A.   12(b)(1) ............................................................................................................. 3

  B.   12(b)(6) ............................................................................................................. 5

  C.   Summary........................................................................................................... 5

IV.   Argument ........................................................................................................... 6

  A.   Declaratory Judgment Subject Matter Jurisdiction.......................................... 6

    1.   Adverse Legal Interest ................................................................................. 6

    2.   Defense for third parties / proposing hypotheticals ................................... 10

    3.   Allegations of sufficient reality................................................................. 10

  B.   Breach of Contract Subject Matter Jurisdiction............................................. 11

  C.   Amount in controversy ................................................................................... 12

  D.   FAS has adequately stated its claims ............................................................. 12

    1.   CA '567 patent is within the scope (Count III)............................................ 13

    2.   Unrestricted sale (Counts I and II) ............................................................. 15

    3.   Contractual duty (Count II)........................................................................ 16

    4.   Exhaustion Applies (Count II) ................................................................... 17

    5.   "Affiliate" (Count III) ................................................................................ 19

  E.   No deferral to Canadian court......................................................................... 19

## Cases

*Arrowhead Indus. Water v. Ecolochem, Inc.*,
  846 F.2d 731 (Fed. Cir. 1988) ............................................................................ 8

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ............................... 5,6

*Bryson v. Gonzales*,
  534 F.3d 1282 (10th Cir. 2008) ......................................................................... 6

*Capo, Inc. v. Dioptics Med. Prods., Inc.*,
  387 F.3d 1352 (Fed. Cir. 2004) ..................................................................... 5, 23

*Cyrix Corp. v. Intel Corp.*,
  803 F. Supp. 1200 (E.D. Tex. 1992) ................................................................ 10

*Danisco U.S. Inc. v. Novozymes A/S*,
  744 F.3d 1325 (Fed. Cir. 2014) ....................................................................... 12

*David v. City and County of Denver*,
  101 F.3d 1344 (10th Cir. 1996), cert. denied, 522 U.S. 858, 118 S. Ct. 157, 139 L. Ed. 2d 102
  (1997) ............................................................................................................. 18

*Elecs. for Imaging, Inc. v. Coyle*,
  394 F.3d 1341 (Fed. Cir. 2005)) ........................................................................ 5

*Eli Lilly & Co v Novopharm Ltd*,
  (1998) 2 SCR 129 ........................................................................................... 19

*EMC Corp. v. Norand Corp.*,
  89 F.3d 807, 814 (Fed. Cir. 1996) ................................................................ 5, 23

*Endo Pharms. Inc. v. Actavis, Inc.*,
  746 F.3d 1371 (Fed. Cir. 2014) ....................................................................... 16

*Glob. Communs.*,
  No. 4:12cv651-RH/CAS, 2015 U.S. Dist. LEXIS 178289 .................................. 10

*Green v. Corr. Corp. of Am.*,
  401 Fed. Appx. 371 (10th Cir. 2010) ............................................................... 14

*Holt v. United States*,
  46 F.3d 1000 (10th Cir.1995 .............................................................................. 3

*Impression Prods. v. Lexmark Int'l, Inc.*,
  137 S. Ct. 1523 (2017) ................................................................................. 9, 19

*Martin v. Franklin Capital Corp.*,
  251 F.3d 1284 (10th Cir. 2001) ....................................................................... 13

*MedImmune, Inc. v. Genentech, Inc.*,
  549 U.S. 118, 127 S. Ct. 764, 166 L. Ed. 2d 604 (2007) ................................ 4,7

*Micron Tech., Inc. v. MOSAID Techs., Inc*,
  518 F.3d 897 (Fed. Cir. 2008) ....................................................................... 5, 7

*Monsanto Co. v. Scruggs*,
  459 F.3d 1328 (Fed. Cir. 2006) ....................................................................... 17

*Nat'l Union Fire Ins. Co. v. Kozeny*,
  115 F. Supp. 2d 1243 (D. Colo. 2000) ............................................................ 22

*Potter Instrument Co. v. Control Data Corp.*,

No. IP 69-C-116, 1971 U.S. Dist. LEXIS 14379, at *2 (S.D. Ind. Mar. 2, 1971) ................... 10

*Quanta Computer, Inc. v. LG Electronics, Inc.*,
    553 U.S. 617, 128 S. Ct. 2109, 170 L. Ed. 2d 996 (2008) ...................................................... 9

*Ridge at Red Hawk, L.L.C. v. Schneider*,
    493 F.3d 1174 (10th Cir. 2007) ................................................................................................ 5

*Robbins v. Wilkie*,
    300 F.3d 1208 (10th Cir. 2002) ................................................................................................ 6

*Robertson v. Colvin*,
    564 F. App'x 931 (10th Cir. 2014) ........................................................................................ 13

*Royal & Sun All. Ins. Co. of Can. v. Century Int'l Arms, Inc.*,
    466 F.3d 88 (2d Cir. 2006) ...................................................................................................... 22

*Ruiz v. McDonnell*,
    299 F.3d 1173 (10th Cir. 2002) ................................................................................................ 3

*SanDisk Corp. v. STMicroelectronics, Inc.*,
    480 F.3d 1372 (Fed. Cir. 2007) .............................................................................................. 12

*St. Paul. Mercury Indem. Co. v. Red Cab Co.*,
    303 U.S. 283, 58 S. Ct. 586, 82 L. Ed. 845 (1938)) .............................................................. 14

*Sutton v. Utah State Sch. for the Deaf & Blind*,
    173 F.3d 1226 (10th Cir. 1999) ................................................................................................ 6

*TransCore, LP v. Elec. Transaction Consultants Corp.*,
    563 F.3d 1271 (Fed. Cir. 2009) ................................................................................................ 9

*Warsaw Orthopedic, Inc. v. Nuvasive, Inc.*,
    2013 U.S. Dist. LEXIS 192325 (S. D. Cal. Aug. 19, 2013) .................................................. 10

*Zila, Inc. v. Tinnell*,
    502 F.3d 1014 (9th Cir. 2007) ................................................................................................ 20

**Rules**

Fed. R. Civ. P. Rule 12(b)(1) .................................................................................................... 3
Fed. R. Civ. P. Rule 12(b)(6) .................................................................................................... 3

## I.      Introduction

FAS did not  ██████████████████████████████

████ so that Frac Shack could turn around and start threatening and even suing FAS's users,

customers, and lessees. Frac Shack and FAS compete in providing fuel delivery services at

hydraulic fracturing sites. Frac Shack previously sued FAS for patent infringement, ██████████

████████████████████████████████████████████████

████████████████████████████████████

████████

FAS did not settle the patent lawsuit because FAS thought that it infringed Frac Shack's

patents. Indeed, shortly before settlement, the Court rejected Frac Shack's motion for summary

judgment of infringement. Rather, FAS settled the patent infringement lawsuit so that it could

compete in the market without the distraction and cost of litigation. But instead of trying to

compete fairly in the marketplace, Frac Shack has resorted to threatening (and even suing in one

instance) those companies that seek to work with or purchase services from FAS. As these

actions not only stifle fair competition but also violate the parties' Settlement Agreement, FAS

has been left with no choice but to enforce that Settlement Agreement – ██████████████████

████████████████████████

In response, Frac Shack has filed a motion to dismiss that relies on factual distortions.

Specifically, Frac Shack has altered the facts as pleaded by FAS to claim that Frac Shack's

actions do not give to FAS a case and controversy or subject matter jurisdiction. But this is not

accurate. ████████ Declaratory Judgment Act ████████████████████████ offer FAS relief

from Frac Shack's "scare the customer and run" tactics.

1

## II.      Factual Background

Frac Shack previously sued FAS for patent infringement, resulting in a Settlement

Agreement 

, FAS entered into an agreement with Ovintiv

Canada ULC to sell goods and services related to the FAS Equipment, including all necessary

labor, supervision, equipment, materials, transportation, and other incidentals. FAS then

subcontracted services of the operation of the FAS Equipment to be used on the Ovintiv site by

hiring KVA Fuel Services Ltd. ("KVA") to operate the FAS Equipment. (Complaint, at ¶¶20-

21).

On March 24, 2020, Frac Shack and its wholly owned subsidiary sued KVA in Canada

for alleged patent infringement of Canadian Patent No. 2,693,567 ("CA '567 patent") related to

KVA's operation of the FAS Equipment on Ovtiniv's well site. The CA '567 patent is related to

Frac Shack's U.S. fuel delivery system and method patents through priority claims – specifically,

Frac Shack's U.S. fuel delivery system and method patents claim priority to the CA '567 patent.

(Complaint, at ¶¶22-23). This means that the protection for the patent that Frac Shack relied on

in the United States was retroactive to the date on which Frac Shack filed its earlier '567 patent in Canada as opposed to the date on which the U.S. version of the patent was filed.

Frac Shack is threatening similar lawsuits against FAS's actual and prospective customers in the United States. As one example, FAS entered into an agreement to lease FAS Equipment to REV Energy Services, LLC ("REV Frac"), a Colorado company. Frac Shack and its attorneys called REV Frac on May 20, 2020 and threatened to sue REV Energy Services for patent infringement if they leased FAS Equipment from FAS. As a result of this call, REV Frac decided not to lease FAS Equipment from FAS. (Complaint, at ¶¶26-30).

FAS therefore filed this lawsuit to stop Frac Shack's conduct so that FAS may obtain the benefit that it bargained for in the Settlement Agreement.

### III.    Legal Authority

Frac Shack's Motion to Dismiss relies on both Rule 12(b)(1)(lack of subject-matter jurisdiction) and Rule 12(b)(6)(failure to state a claim upon which relief can be granted). This Response will address the legal standard for each of these challenges in turn.

### A.  12(b)(1)

Frac Shack's Motion to Dismiss alleges a lack of subject matter jurisdiction. Its Motion does not challenge the facts that FAS pleaded but rather whether the facts pleaded are sufficient to justify jurisdiction. As such, Frac Shack's Rule 12(b)(1) motion is a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction. *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002), citing *Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir.1995). A facial attack on the complaint's allegations as to subject matter jurisdiction "questions the sufficiency of the complaint." *Holt*, 46 F.3d at 1002. In reviewing a facial attack, the Court "must accept the allegations in the complaint as true." *Id*.

This facial attack Rule 12(b)(1) motion addresses, in part, FAS's Count I, which alleges a patent-related declaratory judgment dispute. Before the Supreme Court's opinion in *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 S. Ct. 764 (2007*)*, the Federal Circuit had articulated a two-part test that first considered whether conduct by the patentee creates a reasonable apprehension on the part of the declaratory judgment plaintiff that it will face an infringement suit, and second examined whether conduct by the declaratory judgment plaintiff amounts to infringing activity or demonstrates concrete steps taken with the intent to conduct such activity.

In *MedImmune*, the Supreme Court addressed the "reasonable apprehension of suit" aspect of the Federal Circuit's two-part test and concluded that it conflicted with Supreme Court precedent. *Id*. at 777. So, in place of the reasonable threat of imminent suit test, the Supreme Court put in place a less demanding "whether the facts alleged under all the circumstances show that there is a substantial controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune*, 127 S. Ct. at 771.

This "now more lenient legal standard facilitates or enhances the availability of declaratory judgment jurisdiction in patent cases." *Micron Tech.*, 518 F.3d at 902. A district court, when deciding whether to exercise its discretion, should decide whether hearing the case would "serve the objectives for which the Declaratory Judgment Act was created." *Capo, Inc. v. Dioptics Med. Prods., Inc*., 387 F.3d 1352, 1355 (Fed. Cir. 2004) (quoting *EMC Corp. v. Norand Corp*., 89 F.3d 807, 814 (Fed. Cir. 1996)). The objective of the declaratory action is to allow a party "who is reasonably at legal risk because of an unresolved dispute, to obtain judicial resolution of that dispute without having to await the commencement of legal action by the other side." *Capo*, 387 F.3d at 1354-55. Otherwise the declaratory plaintiff is left "helpless and

immobile so long as the patent owner refuse[s] to grasp the nettle and sue." *Micron Tech*, 518 F.3d at 902 (citing *Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1346 (Fed. Cir. 2005)). "When these objectives are served, dismissal is rarely proper." *Micron Tech,* 518 F.3d at 902.

### B.  12(b)(6)

To survive a 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). The Court must accept the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff, *Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002). So long as the plaintiff offers sufficient factual allegations such that the right to relief is raised above the speculative level, it has met the threshold pleading standard. See, e.g., *Twombly*, 550 U.S. at 556; *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (internal citation omitted).

### C.  Summary

Under either the Rule 12(b)(1) standard or the Rule 12(b)(6) standard, the facts as pleaded by FAS control and those facts should be construed in the light most favorable to FAS.

**IV.     Argument**

This section will first discuss why there is subject matter jurisdiction for all counts, followed by an explanation as to why the amount in controversy was adequately pleaded; then FAS will address, for each Count, why it adequately stated a claim, and will conclude by refuting Frac Shack's position that this dispute should be handled by a Canadian court.

**A.  Declaratory Judgment Subject Matter Jurisdiction**

Frac Shack alleges that there is no subject matter jurisdiction over FAS's declaratory judgment count, apparently because Frac Shack thinks that it and FAS do not have an adverse legal interest so long as (a) Frac Shack does not threaten FAS directly and (b) FAS asks only for a declaration of third party rights. But this is incorrect. FAS is asking the Court to declare FAS's rights in the Settlement Agreement, which is precisely the type of situation that the Declaratory Judgment Act was designed to address. ████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████ Considering "all the circumstances" there is a controversy, especially under the Federal Circuit's "now more lenient legal standard[that] facilitates or enhances the availability of declaratory judgment jurisdiction in patent cases." *Micron Tech.*, 518 F.3d at 902.

1.  <u>Adverse Legal Interest</u>

Contract disputes are "precisely the type of action the Declaratory Judgment Act contemplates." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 125, 127 S. Ct. 764, 166 L. Ed. 2d 604 (2007). Nevertheless, in its attempt to find legal support for its Motion, Frac Shack relies on pre-*Medimmune* cases (Motion at 4). These cases employ a standard that the Supreme Court specifically rejected in *MedImmune*. And unlike the *Microchip* case that Frac Shack cites,

in which the parties were "not competitors in a given industry," FAS and Frac Shack are certainly competitors. 441 F.3d at 944.

To the extent pre-*Medimmune* cases are still informative, this case is more like *Arrowhead Indus. Water v. Ecolochem, Inc*., 846 F.2d 731 (Fed. Cir. 1988), which explained that conduct like Frac Shack's is the "sad and saddening scenario that led to enactment of the Declaratory Judgment Act" in the first place. 846 F.2d at 734. Like in *Arrowhead*, FAS would be "rendered helpless" by Frac Shack's "scare-the-customer-and-run tactics" without the availability of a declaratory judgment.  *Id*. at 735. Like Frac Shack, the declaratory defendant in *Arrowhead* had been threatening the declaratory plaintiff's customers with patent litigation but then moved to dismiss Arrowhead's declaratory judgment complaint alleging lack of actual controversy. *Id*. at 733-34. The court reversed the district court's dismissal articulating a test (under the former, more stringent standard) of two elements that had been met: "(1) acts of defendant indicating an intent to enforce its patent; and (2) acts of plaintiff that might subject it or its customers to suit for patent infringement." *Id*. at 737-39.

Here, FAS filed its Declaratory Judgment Count to request that this Court declare the rights and legal relationship of FAS in its Settlement Agreement with Frac Shack because  Specifically, FAS is making authorized sales of its Fuel Automation Station Equipment under the Settlement Agreement, and Frac Shack is threatening and suing the downstream users of that equipment. (Complaint, at ¶18). It has done just that, however.

7

███████████████████████████████████████

███████████████████████████████████████████

█████████ Further, if it is Frac Shack's position that FAS's sale or lease of the FAS Equipment is not authorized under the Settlement Agreement, then Frac Shack must think that it is entitled to sue FAS for such acts. This alone would render a Declaratory Judgment action necessary.

    *a. Exhaustion*

To understand the scope of ████████████████████, a discussion of the issue of patent exhaustion is warranted. The patent exhaustion doctrine provides that, when a patentee sells one of its products, the patentee can no longer control that item through the patent laws—its patent rights are said to "exhaust." *Impression Prods. v. Lexmark Int'l, Inc*., 137 S. Ct. 1523, 1529 (2017). The Federal Circuit's holding in *TransCore, LP v. Elec. Transaction Consultants Corp*., 563 F.3d 1271, 1274 (Fed. Cir. 2009) controls the issue in this case. That court noted that "in *Quanta Computer, Inc. v. LG Electronics, Inc*., 553 U.S. 617, 128 S. Ct. 2109, 170 L. Ed. 2d 996 (2008), the Supreme Court reiterated unequivocally that '[t]he longstanding doctrine of patent exhaustion provides that the initial authorized sale of a patented item terminates all patent rights to that item,' *id*. at 2115, and that '[e]xhaustion is triggered only by a sale authorized by the patent holder.'" 563 F.3d at 1274. The *TransCore* court then held that an unconditional covenant not to sue authorizes sales by the covenantee for purposes of patent exhaustion. *Id*.

Notably, ███████████████████████████

███████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

8

██████████████████████████████████████████████████, leasing
also qualifies as an act that would otherwise be an infringement.[1]

Indeed, leasing is explicitly mentioned in ████████████ press release regarding
the Settlement Agreement, which states: "both Parties are expressly permitted to manufacture,
use, sell, lease, and license their respective mobile automated fuel distribution units utilized in
the fracking industry." And the lawsuit that the parties settled through their Settlement
Agreement was premised on a lease of FAS's Fuel Automation Station equipment to a party-
lessee.

As such, in view of *Medimmune*, the facts alleged here show that there is a substantial
controversy between parties having adverse legal interests, and of sufficient immediacy and
reality to warrant the issuance of a declaratory judgment. Not only do the parties need this Court
to declare the rights and other legal relations of FAS in its Settlement Agreement with Frac
Shack, but ████████████████████████████████████
██████████████████████████, such that Frac Shack must
believe that they can sue FAS for such acts. Either FAS's sales and leases are authorized, in

---

[1] See e.g. *Potter Instrument Co. v. Control Data Corp*., No. IP 69-C-116, 1971 U.S. Dist. LEXIS
14379, at *2 (S.D. Ind. Mar. 2, 1971)(treating sales and leases as acts of infringement); *Glob.
Communs*., No. 4:12cv651-RH/CAS, 2015 U.S. Dist. LEXIS 178289, at *21 ("[T]he issue is
whether the covenant authorized DirecTV to use the patent going forward. It did. Based on the
covenant, DirecTV could make, use, or sell the patented invention. Based on *TransCore*,
DirecTV's downstream supporting parties and subscribers also could make, use, or sell
equipment obtained through DirecTV."); *Cyrix Corp. v. Intel Corp*., 803 F. Supp. 1200, 1214-15
(E.D. Tex. 1992) (Under "Patent Exhaustion Doctrine," where patentee "granted a license "to
make, to have made, to use, to sell (either directly or indirectly), to lease and to otherwise
dispose of 'Licensed Products.'" … any disposition of a Licensed Product by a licensee under the
… Agreement--by sale or otherwise--exhausts patentee's patent rights with respect to that
article."); *Warsaw Orthopedic, Inc. v. Nuvasive, Inc*., 2013 U.S. Dist. LEXIS 192325 (S. D. Cal.
Aug. 19, 2013) (the Court revised its order regarding ongoing royalties to explicitly call out that
the "order intended to encompass any lease-type fees paid to Nuvasive… as a form of sales.").

which case Frac Shack's patent rights against downstream users are exhausted, or they are not authorized, in which case Frac Shack has a case against either or both of FAS and the downstream user.

### 2. Defense for third parties / proposing hypotheticals

Frac Shack mischaracterizes FAS's request for relief as a declaration that Frac Shack "cannot sue" based on a "hypothetical defense" by a third party. This is not the case. FAS is requesting that the Court declare the rights and legal relationship of FAS in its Settlement Agreement with Frac Shack. Specifically and in full, FAS proposes at paragraph 46 of the Complaint that the Court declare that ████████████████████████████████ ███████████████████████████████████████████████████████████████ █████████, such that Frac shack cannot sue any customers, lessees, or users of that FAS Equipment." (Complaint, at ¶46). This is what FAS alleges it is "entitled to," and the Court is free to modify or clarify the proposed language at its discretion. *Id.*

### 3. Allegations of sufficient reality

Contrary to Frac Shack's assertion that "FAS does not provide what was specifically said" and "FAS does not specify what country the actions were contemplated to take place," FAS alleges that Frac Shack threatened to sue REV Energy Services for patent infringement in the United States (Complaint, ¶¶26-30). This is enough to establish allegations of sufficient reality.[2]

---

[2] Indeed, FAS has pleaded that Frac Shack made an express accusation of infringement, which goes above and beyond the requirements. *Danisco U.S. Inc. v. Novozymes A/S*, 744 F.3d 1325, 1330 (Fed. Cir. 2014) ("Article III does not mandate that the declaratory judgment defendant have threatened litigation or otherwise taken action to enforce its rights before a justiciable controversy can arise."); *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1382-83 (Fed. Cir. 2007) ("We decline to hold that Jorgenson's statement that ST would not sue SanDisk eliminates the justiciable controversy created by ST's actions, because ST has engaged in a course of conduct that shows a preparedness and willingness to enforce its patent rights despite Jorgenson's statement.").

It is FAS's burden at trial to meet its burden of proof but for a motion to dismiss, the facts as alleged by FAS are to be accepted as true and accurate. *Holt*, 46 F.3d at 1002. Frac Shack takes issue with "what patent or patents were supposedly asserted," but of course these infringement threats, which occurred in the U.S., were regarding Frac Shack's U.S. patents related to the FAS Equipment, i.e., the U.S. patents in the Frac Shack Patent Rights.

Still further, Frac Shack's actions imply that Frac Shack believes that FAS's sale or lease of the FAS Equipment to companies like REV Frac is not authorized, such that a Frac Shack action against FAS for such sales would be of sufficient immediacy and reality. If Frac Shack believes that FAS's lease of fuel automation equipment to downstream companies like REV Frac is covered by ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, it can simply state that and then this portion of the Complaint, at least, would no longer be at issue.

### B.  Breach of Contract Subject Matter Jurisdiction

Frac Shack also alleges there is no subject matter jurisdiction for FAS's two breach of contract Counts because FAS has not pleaded enough of an injury. But the facts pleaded, which must be accepted as true, show more than sufficient injury.

FAS has alleged multiple injuries, both actual and imminent, sufficient to confer standing to bring suit for Counts II and III. As pleaded, Frac Shack has sued one of FAS's partners, and FAS has been forced to engage U.S. and Canadian counsel regarding this dispute. And the imminent joining of FAS into this suit will result in additional legal fees and costs incurred. (Complaint, at ¶¶54-59, 62-69).

Further, the lawsuit is public, and word of the lawsuit and the threats have spread around the industry, harming FAS's reputation and negatively affecting FAS's relationships with its customers and business partners. *Robertson v. Colvin*, 564 F. App'x 931, 934 (10th Cir. 2014)

("Generally, injury to one's reputation can be a cognizable injury-in-fact to confer standing to bring suit.")

### C.  Amount in controversy

Frac Shack apparently believes that FAS has not adequately pleaded an amount in controversy to establish diversity jurisdiction (Motion, at 9), but Frac Shack's position is inconsistent with the law. As the case Frac Shack cited states "[w]hen a case is originally brought in federal court, the plaintiff's claimed amount is presumed to support diversity jurisdiction." *Martin v. Franklin Capital Corp*., 251 F.3d 1284, 1289 (10th Cir. 2001). So FAS's claimed amount is presumed to support diversity jurisdiction. And further, the attorney fees and costs associated with this action and the KVA dispute (Complaint, at ¶19) and the negative effect on FAS's relationships with its customers and business partners (Complaint, at ¶¶ 55, 65) total an amount of damages to FAS greater than $75,000. FAS is not required to plead an exact amount of damages; it merely must plead facts which support that the jurisdictional amount has been met. *Green v. Corr. Corp. of Am*., 401 Fed. Appx. 371, 377 (10th Cir. 2010) ("dismissal is justified only if it 'appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount'")(quoting *St. Paul. Mercury Indem. Co. v. Red Cab Co*., 303 U.S. 283, 289, 58 S. Ct. 586, 82 L. Ed. 845 (1938)). To the extent that more is needed, FAS now confirms that its damages here are far in excess of $75,000.

### D.  FAS has adequately stated its claims

Frac Shack alternatively moves to dismiss all of FAS's counts for alleged failure to state a claim. To support its position, Frac Shack has been forced to misconstrue the Settlement Agreement, alter or omit facts pleaded, and attempted to require details that are not actually required at this stage.

1.  <u>CA '567 patent is within the scope (Count III)</u>

Frac Shack proposes a strained and even desperate interpretation of the phrase 

But this language –

. Specifically, the

phrase ████████████████ describes how Frac Shack's foreign patents are related to the

U.S. Patents. And, here, the CA '567 patent is related to the U.S. Patents in such a manner

because each of those patents and applications claim priority to the CA '567 patent. Said another

way, the phrase

Frac Shack instead takes a strained interpretation of this language that is inconsistent with

both English grammar ████████████████. It also may reflect an

illegitimate patent prosecution strategy. ████████████████ This

is because it would not be a legitimate patent prosecution strategy for Frac Shack to file foreign

patents that claim priority to the U.S. patents and applications.

This foreign filing limitation is due to the Paris Convention, which is a treaty most

industrialized countries have joined. The treaty offers to parties filing patent applications in a

member country a grace period within which patent applications can be filed in other member

countries. In the case of a utility patent like the patents at issue, the grace period is one year. So,

this treaty affords an individual or a corporation a grace period within which to file foreign

13

patent applications in member countries, the grace period being measured from the date of filing the first patent application in a member country directed to the invention in question. Since most major countries are members of the Paris Convention, the individual or corporation can usually file a patent application in its home country and then later (within the grace period) file corresponding patent applications in other member countries.

Frac Shack did just that – it filed in its home country of Canada and then later filed in the U.S. and Australia, claiming priority back to its original Canadian filing. The Canadian, U.S., and Australian patents are therefore all related through priority claims.[3] Indeed, all of the U.S. patents indicate on their face that they are related to the CA '567 patent through priority claims:

| (30) | **Foreign Application Priority Data** |
|---|---|
| Feb. 16, 2010 | (CA) ................................... 2693567 |

FAS is aware of no legitimate strategy in which Frac Shack could later file other foreign applications that claim priority to the U.S. applications. ██████████████████████ ████████████████████████████████████████████████ █████████████████████████████████████.

And even if Frac Shack could somehow explain how its interpretation does not render the language meaningless, its interpretation still would be grammatically incorrect. █████████ ████████████████████████████████████████████████ ████████████████████████████████████████████ ██████████████████████████████████████ And Frac

_____

[3] It was always FAS's intention to include the foreign patents in the settlement. ██████████ ████████████████████████████████████

Shack's cite to *Endo Pharms. Inc. v. Actavis, Inc.*, 746 F.3d 1371 (Fed. Cir. 2014), which

involves ██████████████████████████████████████████████████

██ is inapplicable here.

Further, FAS does not believe the language is ambiguous, █████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████

2.   <u>Unrestricted sale (Counts I and II)</u>

Frac Shack argues that FAS failed to plead that its sales were "unrestricted" (Motion, at

10-11), but this level of detail is unnecessary.  Frac Shack's argument here regarding

"unrestricted" sales warrants a discussion of the case on which it relies - *Monsanto Co. v.*

*Scruggs*, 459 F.3d 1328, 1335–36 (Fed. Cir. 2006). In *Monsanto*, the court dealt with

unauthorized planting of second-generation seeds. Monsanto's licensed producers sell Roundup

Ready® seeds to growers for planting. All sales to growers, whether from Monsanto or its

licensed producers, are subject to a standard form limited use license. Scruggs purchased

Roundup Ready® soybean seeds from one of Monsanto's authorized seed companies and never

executed the license. 459 F.3d at 1333. Under the license, the licensed grower would agree: (1)

"to use the seed containing Monsanto gene technologies for planting a commercial crop only in a

single season"; (2) "to not supply any of this seed to any other person or entity for planting"; (3)

"to not save any crop produced from this seed for replanting, or supply saved seed to anyone for

replanting"; and (4) "to not use this seed or provide it to anyone for crop breeding, research,

generation of herbicide registration data, or seed production." Scruggs planted the purchased

seeds, harvested them, and replanted the second-generation seeds containing the Roundup

Ready® trait. *Id*. Scruggs asserted the doctrine of patent exhaustion as one of many defenses, and the court held that it was inapplicable: "There was no unrestricted sale because the use of the seeds by seed growers was conditioned upon obtaining a license from Monsanto." *Id*. at 1334. The *Monsanto* case is therefore an example of a restricted sale.

Frac Shack points to no authority in which the use of the word "unrestricted" was required to survive a motion to dismiss a claim that involved patent exhaustion. If this court wants FAS to amend its complaint to include the word "unrestricted" or to affirmatively plead that the sales were not subject to the purchase of licenses such as those in *Monsanto*, FAS will do so. However, the court "must accept all the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff." *David v. City and County of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996), cert. denied, 522 U.S. 858, 118 S. Ct. 157, 139 L. Ed. 2d 102 (1997)(citations omitted). In that light, FAS believes its pleadings regarding the sales at issue are sufficient to state a claim.[4]

### 3.    Contractual duty (Count II)

Contrary to Frac Shack's assertions, FAS has sufficiently alleged a contractual duty that Frac Shack breached. ███████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ████████████████████████████████ By authorizing such acts, under the patent exhaustion theory, Frac Shack gave up its right to sue downstream operators of the FAS Equipment after FAS made an authorized sale or lease. (Complaint, at ¶¶48-54). ████████████████████████

---

[4] And although Frac Shack mischaracterizes FAS's allegation at paragraph 27 as that FAS "leased equipment to KVA" (the allegation is actually about REV Frac), FAS must point out that a lease is equivalent to a sale in this context ██████████████████████████████ ███ See, *supra*, n.1.

██████████████████████████████████████████████████████████

████████████████████████████████████████████ And by suing one such user,

KVA, Frac Shack breached that duty.

   4.   Exhaustion Applies (Count II)

   Frac Shack alleges that FAS's complaint does not explain why the doctrine of patent

exhaustion could exhaust Frac Shack's Canadian patent rights in the referenced Canadian KVA

case, apparently leading to a conclusion that FAS failed to state a claim. (Motion, at 12-13).

First, FAS's complaint doesn't have to explain the doctrine of exhaustion. Nonetheless, the

exhaustion as applied to Frac Shack's Canadian patent is explained below.

   In the United States, the Supreme Court has held that foreign sales exhaust U.S. patent

rights. *Impression Prods. v. Lexmark Int'l, Inc*., 137 S. Ct. 1523, 1531 (2017). The Court held

that a patent owner's exclusive rights can be exhausted through its international sales and

recognized that U.S. patent laws do not traditionally apply abroad. 137 S. Ct. 1523, 1536, 198 L.

Ed. 2d 1 (2017). The Court concluded that a patent owner cannot assert infringement liability

against a party importing its foreign-sold patented inventions into the United States. *Id*. And

Canadian patent law has a similar concept. (*Eli Lilly & Co v Novopharm Ltd*, (1998) 2 SCR

129)(attached as Exhibit 1). Specifically in *Eli Lilly*, the Supreme Court of Canada confirmed

that when a patentee sells a patented product, ownership of that product is transferred to the

purchaser, and, subject to any agreed upon restrictions, the purchaser has the exclusive right to

do as it wishes with the product without fear of infringing the patent, and the patentee no longer

has any rights with respect to that product. And as shown in the *Eli Lilly* case, Canadian courts

will consider US cases for persuasive arguments. Whether or not there is exhaustion may be a

question of Canadian law, but, if there is exhaustion, then Frac Shack breached a ███████

████████████████████ – a question for this court to decide.

What Frac Shack did was a breach of the Settlement Agreement. FAS is here to enforce

that Agreement. ████████████████████████████████████████████████

██████████████████

Frac Shack confusingly argues that FAS's limitation of the declaratory judgment to

threats in the U.S. was somehow an admission that exhaustion does not apply to the Canadian

patent. But this had nothing to do with territoriality - FAS brought its declaratory judgment for

*threats* (which occurred in the U.S.) and its breach of contract claims for the *lawsuit* (which

occurred in Canada).

And the Ninth Circuit Court of Appeals case Frac Shack cites, *Zila, Inc. v. Tinnell,* 502

F.3d 1014 (9th Cir. 2007), does not stand for Frac Shack's sweeping statement that "U.S.

common law generally does not apply to a foreign patent." *Zila* dealt with a very specific issue

regarding patent royalties and did not discuss exhaustion. Specifically, in *Zila*, a patentee secured

an American patent and a Canadian patent and licensed them to Zila for royalties. *Id*. at 1017-18.

The U.S. patent expired in 1998, and the Canadian patent did not expire until 2002. *Id*. Zila sued

seeking a declaratory judgment that, under a case called *Brulotte*, it was not obligated to pay any

royalties on either the Canadian or the U.S. patent following the expiration of the U.S. patent in

1998. *Id*. at 1018. The Ninth Circuit found that the expiration of the U.S. patent had no effect on

Zila's obligation to pay royalties on sales covered by the Canadian patent. *Id*. at 1023-24.

Moreover, the Canadian law issue was not even before that court on appeal to decide. *Id*. at 1024

n.6 ("Whether royalties are payable for Canadian sales once the Canadian patent expires, a

matter of Canadian law, is not before us.").

   5.  "Affiliate" (Count III)

FAS has not alleged that KVA is an affiliate of FAS; nor does it need to. This is therefore

not detrimental to FAS's claim as Frac Shack alleges. (Motion, at 16-17).

First, as FAS pleaded, KVA was acting on behalf of FAS and therefore its operation of

the FAS Equipment ███████████████████████████. Indeed, the Settlement Agreement

███████████████████████████████████ ███████████████. (Doc.

3-1, at 16). FAS entered into an agreement with Ovintiv Canada ULC to sell goods and services

related to the FAS Equipment and including all necessary labor, supervision, equipment,

materials, transportation, and other incidentals. (Complaint, ¶20). FAS then subcontracted

services of the operation of the FAS Equipment to be used on the Ovintiv site by hiring KVA

Fuel Services Ltd. ("KVA") to operate the FAS Equipment. (Complaint, ¶21). ███████████

████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████ FAS has been informed that FAS will be joined into a foreign

legal proceeding as a result of Frac Shack's lawsuit. (Complaint, at ¶69). By suing KVA in

Canada for infringement of the CA '567 patent, ███████████████████████████████

████████████████████████████████████████

**E.  No deferral to Canadian court**

Frac Shack alleges that the court should stay this action in view of the Canadian matter,

but the Court should not do so because there are no "exceptional circumstances" that warrant

such a stay.

Count I requests a declaration regarding █████████████████████████  ████████████████████ . Counts II and III are for breach of the same ████████████ ███████████████████ These are therefore matters for a U.S. court to decide.

There are no exceptional circumstances here that justify the surrender of federal jurisdiction. *Royal & Sun All. Ins. Co. of Can. v. Century Int'l Arms, Inc*., 466 F.3d 88, 93 (2d Cir. 2006); *Nat'l Union Fire Ins. Co. v. Kozeny*, 115 F. Supp. 2d 1243, 1246 (D. Colo. 2000). The factors[5] for determining whether exception circumstances exist weigh against a stay. The actions and parties are not similar, as Canadian case involves Frac Shack suing a third party for Canadian patent infringement, and this case involves FAS suing Frac Shack for declaratory judgment and breach of contract. And, regarding the adequacy of relief available in the alternative forum, FAS will not be able to get the ████████ declaratory and breach relief in the Canadian suit that it can get in this Court.

Similarly, the Court should not use its discretion to deny the declaratory judgment claim in view of the Canadian suit as Frac Shack proposes. As the Federal Circuit has held, a district court, when deciding whether to exercise its discretion, should decide whether hearing the case would "serve the objectives for which the Declaratory Judgment Act was created." *Capo, Inc. v. Dioptics Med. Prods., Inc*., 387 F.3d 1352, 1355 (Fed. Cir. 2004) (quoting *EMC Corp. v. Norand Corp*., 89 F.3d 807, 814 (Fed. Cir. 1996)). "When these objectives are served, dismissal is rarely proper." *Micron Tech.,* 518 F.3d at 902.  A U.S. decision on a ███████████ involving a U.S.

---

[5] "1) similarity of parties and issues involved in the foreign litigation; 2) the promotion of judicial efficiency; 3) adequacy of relief available in the alternative forum; 4) issues of fairness to and convenience of the parties, counsel, and witnesses; 5) the possibility of prejudice to any of the parties; and 6) the temporal sequence of the filing of the actions." 115 F. Supp. 2d at 1246.

company ██████████████████████████ should be decided in the U.S. and not Canada.

Respectfully Submitted,

Dated: September 15, 2020

/s/ Steven Susser
Steven Susser
Alex Szypa (appearance forthcoming)
CARLSON, GASKEY & OLDS, PC
400 W. Maple Rd., Suite 350
Birmingham, MI 48009
Telephone: (248) 988-8360
Facsimile: (248) 988-8363
ssusser@cgolaw.com
aszypa@cgolaw.com

*Attorneys for Plaintiff Fuel Automation Station, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on September 15, 2020, I electronically filed Fuel Automation Station LLC's Response to Frac Shack Inc.'s Motion to Dismiss All Claims with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

Dated: September 15, 2020

/s/ Steven Susser
Steven Susser
Alex Szypa
CARLSON, GASKEY & OLDS, PC
400 W. Maple Rd., Suite 350
Birmingham, MI 48009
Telephone: (248) 988-8360
Facsimile: (248) 988-8363
ssusser@cgolaw.com
aszypa@cgolaw.com

## CERTIFICATE OF WORD LIMIT COMPLIANCE

I certify that Fuel Automation Station LLC's Response to Frack Shack Inc.'s Motion Dismiss all Claims, does not exceed 10,000 words. I further certify that, in preparation of this brief, I used Microsoft Word, and that this word processing program has been applied specifically to include all text, including headings, footnotes, and quotations in the following word count. I further certify that the above referenced brief contains 6,920 words.

Dated: September 15, 2020

/s/ Steven Susser
Steven Susser