# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

<mark>FILED UNDER RESTRICTION LEVEL 1</mark>

Civil Action No. 20-cv-01492-STV

FUEL AUTOMATION STATION, LLC,

      Plaintiff,

v.

FRAC SHACK INC.,

      Defendant.

---

## ORDER

Entered By Magistrate Judge Scott T. Varholak

      This civil action is before the Court on Defendant Energera, Inc.'s[1] Motion for Summary Judgment ("Defendant's Motion") [#95] and Plaintiff's Motion for Partial Summary Judgment ("Plaintiff's Motion") [#98] (collectively, the "Motions"). The parties have consented to proceed before the undersigned United States Magistrate Judge for all proceedings, including entry of a final judgment. [##30; 31] The Court has carefully considered the Motions and related briefing, the entire case file, and the applicable case law, and has determined that neither oral argument nor an evidentiary hearing would materially assist in the disposition of the Motions. For the following reasons, both Motions are **DENIED**.

---

[1] During all times relevant to this dispute, Energera, Inc. ("Energera") was known as Frac Shack, Inc. ("Frac Shack"). [*See generally* ##3; 97 at 6] The Court will interchangeably refer to Defendant as Defendant, Energera, or Frac Shack.

## I.    BACKGROUND[2]

This case arises out of the parties' disputes regarding a settlement agreement entered into by Fuel Automation Station, LLC ("FAS") and Frac Shack to resolve patent litigation.  [*See generally* ##3, 52-2]  FAS manufactures and provides services related to an automated frac fuel delivery system known as the Fuel Automation System ("FAS Equipment").  [##3, ¶ 9; 44, ¶ 9]

On February 16, 2010, Frac Shack filed a Canadian patent application which resulted in the issuance of a Canadian patent, CA2,693,567 (the "'567 patent").  [#120-1, SOF2]  On February 16, 2011, Frac Shack filed a United States patent application that resulted in the issuance of a United States patent, 9,346,662 (the "'662 patent").  [*Id.* at SOF3]  On May 2, 2016, Frac Shack filed a United States patent application that resulted in the issuance of a United States patent, 10,029,906 (the "'906 patent").  [*Id.* at SOF4]  The '662 patent and the '906 patent claim priority to the '567 patent.  [*Id.* at SOF6]  The '567 patent does not claim priority to any other patent.  [*Id.* at SOF10]

On October 19, 2016, Frac Shack sued FAS in this District alleging infringement of the '662 patent based upon FAS's activity related to the FAS Equipment.[3]  [*Id.* at SOF7; *see also Frac Shack Inc. v. Atlas Oil Co.*, Case No. 16-cv-02275-STV (D. Colo. 2016), #30]  Thereafter, on July 24, 2018, Frac Shack sued FAS in the United States District Court for the Southern District of Texas alleging infringement of the '906 patent based

---

[2] The undisputed facts are drawn from the Separate Statement of Facts filed with FAS's reply in support of Plaintiff's Motion.  [#120-1]  The Court refers to the sequentially numbered facts set forth in the Statement of Facts as "SOF#."  The Court periodically cites directly to the exhibits cited by the parties in the Statement of Facts to provide additional context.

[3] While that case was pending, on June 4, 2018, Frac Shack filed a United States patent application that resulted in the issuance of a United States Patent, 15,997,340 (the "'340 patent").  [#120-1, SOF5]  The '340 patent claims priority to the '567 patent.  [*Id.* at SOF6]

upon FAS's activity related to the FAS Equipment. [##120-1 at SOF8; 52-2 at 2; *see also Frac Shack Inc. v. Atlas Oil Co.*, Case No. 18-cv-02566 (S.D. Tex. 2018)] The '567 patent was not litigated in either of these lawsuits. [#120-1 at SOF9]

At some point, the parties began negotiating a global settlement of these lawsuits. [#100-17][4] The parties proposed various settlement language and, as part of these communications, FAS's counsel wrote to Frac Shack's counsel: ████████████

████████████████████████████████████████████████████

---

[4] Energera has objected to document #100-17 as unauthenticated hearsay. [#115 at 7] Document #100-17 is an email chain containing negotiations between attorneys representing the parties to this litigation. [#100-17] Two of the participants are Steven Susser, counsel for FAS, and Gary Fischman, former counsel for Frac Shack. [*Id.*] The email addresses within document #100-17 for Mr. Susser and Mr. Fischman match the email addresses these attorneys have used for this Court's CM/ECF document filing system. Further, the email chain is bates stamped indicating that it was produced in discovery. Additionally, the contents of the emails contain sensitive information that would only be known to the parties negotiating the settlement. Given these facts, and in the absence of any challenge to the document's validity, the Court finds the email chain properly authenticated. *Direct Benefits, LLC v. TAC Fin. Inc.*, No. SAG-13-1185, 2021 WL 3516359, at *1 (D. Md. Aug. 9, 2021) (explaining that emails can be authenticated based upon their "'appearance, contents, substance, internal patterns, or other characteristics of the [email], taken together with all the circumstances' to show authenticity" (quoting Fed. R. Evid. 901(b)(4)); *Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534, 542, 554 (D. Md. 2007) (explaining that authentication is "not a particularly high barrier to overcome" and that the "contents of the e-mail may help show authentication by revealing details known only to the sender and the person receiving the message" (quotation omitted)); *United States ex rel. Doyle v. All Indian Pueblo Council, Inc.*, No. CIV 01-1361 BB/LFG, 2005 WL 8163792, at *2 (D.N.M. June 20, 2005) ("These [email] printouts identify the sender and the recipient by name, provide the sender's email address, and provide the dates and times they were sent. This information is sufficient to authenticate the documents."). With respect to hearsay, FAS is not offering the document for the truth of the matter asserted, but instead for the fact that the communication was made. [#120 at 12 (citing *Echo Acceptance Corp. v. Household Retail Servs., Inc.*, 267 F.3d 1068, 1087 (10th Cir. 2001))] The Court will therefore not consider the contents for the truth of the matter asserted.

█████ [5] [#100-17 at 4]  FAS's counsel then proposed new language for Paragraph 6. [*Id.* at 5]  Frac Shack's counsel responded that the ████████████████ [*Id.* at 2]

On July 13, 2019, FAS and Frac Shack entered into a confidential, written settlement agreement (the "Agreement"), in which the parties reached a complete settlement of both of the patent infringement lawsuits. [6] [##120-1, SOF15-26; 97-2; 100-2] Pursuant to the Agreement, ████████████████████████████



████████████████████████████ [##120-1, SOF16; 97-2 at 6]  Similarly, ████████████████

████████████████████████. [##120-1, SOF 17; 97-2 at 6] ████████████████. [##120-1, SOF 18; 97-2 at 15]

Pursuant to the Agreement, ████████████████████████

█████ [#97-2 at 3]  Also pursuant to the Agreement, ████████████████████

████████████ [##120-1, SOF19; 97-2 at 3-5] ████████████

████████████████████████

[#97-2 at 5] ████████████████████████

---

[5] Consistent with Note 4 above, the Court does not consider this statement for the truth of its assertion—that FAS was, in fact, expecting the covenant to apply globally. Rather, the Court considers this statement for the purpose of demonstrating that FAS told Frac Shack that FAS intended the covenant to apply globally.

[6] The Agreement "is between [Frac Shack], on the one hand, and Atlas Oil Company and [FAS] (collectively, 'Atlas'), on the other."  [#52-2 at 2]  For purposes of the instant Motions, the Court refers to FAS and Atlas—as defined in the Agreement— interchangeably as FAS.



[*Id.* at 4]

[#120-1, SOF20]  Rather,

[*Id.* at SOF 21]  More specifically, with regard

[#97-2 at 3]

[*Id.* at 2]  The Agreement explicitly set forth that the parties

[*Id.* at 8]

██████████████████████████████████████

██████████████████████████████ [#100-2 at 8, 16] ████████████

██████████████████████████████████████

██████████ [#120-1, SOF54]  The Agreement required ███████████████

██████████████████████████████████████

██████████████████████████████████████

█████████████████████████████████ [*Id.* at SOF25-26; *see*

*also* #100-2 at 8]

As part of the Agreement, ████████████████████████

████████████████████████████████ [##120-1, SOF55;

100-2 at 16] █████████████████████████████████

████████



[#100-2 at 16]

██████████████████████████████████████

██████████████████ [*Id.* at 7]  The Agreement provided that ███████

██████████████████████████████████████

████████████████████████████████████ [*Id.*] ████████

██████████████████████████████████████

███████████████████████ [*Id.*]

6

On March 24, 2020, Frac Shack filed a lawsuit in Canada against KVA Fuel Services Ltd ("KVA") for infringement of the '567 patent (the "KVA Lawsuit"). [#120-1, SOF27] This was based on KVA's operation of a Fuel Automation Station in Canada. [*Id.* at SOF 48] Pursuant to a Master Services Agreement, KVA was acting as a subcontractor on FAS's behalf running Fuel Automation Station units for FAS's customer, Ovintiv. [*Id.* at SOF49; *see also* ##100-10 at 7; 100-14] Frac Shack moved for default judgment in the KVA Lawsuit and FAS and its affiliates moved to intervene.[7] [#120-1, SOF50] FAS and an affiliate incurred fees as a result of the KVA Lawsuit, though Energera disputes the reasonableness of those fees. [#120-1, SOF51]

On May 26, 2020, FAS filed the instant lawsuit against Frac Shack, asserting the following three claims: (1) declaratory judgment that, ███████████████ ██████████████, FAS is authorized to sell or lease the FAS Equipment and Frac Shack cannot sue customers, lessees, or users of that FAS Equipment, (2) breach of the Agreement based upon the KVA Lawsuit, asserting that KVA is an authorized downstream user of the FAS Equipment, and (3) breach of the Agreement based upon Frac Shack suing KVA and thereby engaging FAS in litigation. [#3 at 7-11] Based upon these claims, the Complaint seeks the following relief: (1) a declaration clarifying the parties' rights under the Agreement, (2) damages for the alleged breaches of the

---

[7] Frac Shack does not contest the truth of this statement, but only objects that the "documents and testimony [were] never disclosed in discovery." [#120-1, SOF50] The evidence to support this statement is a declaration from FAS's outside counsel. [*See* #100-13 at 4] It is not uncommon for counsel to submit a declaration in support of certain facts within their knowledge in response to a summary judgment motion. Indeed, Frac Shack has criticized FAS for not submitting such a declaration with respect to other purported facts. [#115 at 7] The Court will thus consider this fact as undisputed for purposes of resolving the instant Motions.

Agreement, including costs, attorneys' fees, and interest, and (3) an order requiring Frac Shack to dismiss the KVA Lawsuit.  [*Id.* at 12]

Sometime after April 2020, FAS incorporated a new Canadian entity, FAS Canada. [#120-1, SOF29]  On September 9, 2020, Energera filed a Canadian lawsuit against FAS Canada for infringement of the '567 Patent (the "FAS Canada Lawsuit").[8]  [#120-1, SOF30]  This was based upon FAS Canada's operation of a Fuel Automation Station in Canada.  [*Id.* at SOF46]  The FAS Canada Lawsuit was dismissed in favor of resolving the instant litigation.  [*Id.* at SOF31]  Though the FAS Canada Lawsuit was dismissed prior to FAS Canada entering an appearance, FAS maintains that it received notice of the dispute, retained counsel, and had counsel write a letter to Energera explaining that the FAS Canada Lawsuit breached the Agreement.  [*Id.* at SOF 32]  Thus, FAS and FAS Canada incurred fees as a result of the FAS Canada Lawsuit, though Energera disputes the reasonableness of those fees.  [*Id.* at SOF51]

At some point in 2020, FAS's outside counsel, perhaps with the assistance of its in-house general counsel, put together an internal "Talking Points" document.  [*Id.* at SOF33]  This document states, in part: "[A]nyone who uses the FAS system in the United States through an agreement [with] FAS will be protected against an infringement claim by Frac Shack."  [*Id.* at SOF34]  The document is silent as to operation of the FAS Equipment outside the United States.  [*Id.* at SOF35]

---

[8] Meanwhile, on August 25, 2020, Frac Shack filed the Motion to Dismiss All Claims (the "Motion to Dismiss") in this matter, seeking dismissal of all of FAS's claims for lack of subject matter jurisdiction, failure to state a claim, and pursuant to international comity and the Court's declaratory judgment discretion.  [#14]  On March 12, 2021, the Court issued an Order denying the Motion to Dismiss in its entirety.  [#41]

On April 28, 2021, FAS filed a Motion for Partial Summary Judgment for Declaratory Relief in this matter seeking a declaration and judgment as to Count I of the Complaint that the sale or lease of an automated fueling unit by FAS to its customers is permitted under the Agreement and that such a sale or lease exhausts Frac Shack's ability to take legal action for patent infringement ██████████████████████ ██████████████████ ("FAS's First Partial Summary Judgment Motion"). [#52] On November 10, 2021, this Court granted FAS's First Partial Summary Judgment Motion to the extent it sought a declaration that ██████████████████████████████ ████████████████████████████ [#81]

On April 11, 2022, Energera filed Defendant's Motion. [#97] That same day, FAS filed Plaintiff's Motion. [#100] Pursuant to a briefing schedule set by the Court [#102], FAS has responded to Defendant's Motion [#110], Energera filed a combined response to Plaintiff's Motion and reply in support of Defendant's Motion [#115], and Plaintiff filed a reply in support of Plaintiff's Motion [#120]. Defendant subsequently filed a sur-reply with objections to one of the documents cited by Plaintiff in its reply. [#129]

## II.    STANDARD OF REVIEW

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Henderson v. Inter–Chem Coal Co.,* 41 F.3d 567, 569 (10th Cir. 1994). Where, as here, the Court is presented with cross-motions for summary judgment, the Court "must view each motion separately, in the light most favorable to the non-moving party, and draw all

reasonable inferences in that party's favor." *United States v. Sup. Ct. of N.M.*, 839 F.3d 888, 907 (10th Cir. 2016) (internal quotations omitted).

When the moving party bears the burden of persuasion at trial, "the moving party must establish, as a matter of law, all essential elements of the [claim on which summary judgment is sought] before the nonmoving party can be obligated to bring forward any specific facts alleged to rebut the movant's case." *Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008). In other words, the moving party "must support its motion with credible evidence showing that, if uncontroverted, the moving party would be entitled to a directed verdict." *Rodell v. Objective Interface Sys., Inc.*, No. 14-CV-01667-MSK-MJW, 2015 WL 5728770, at *3 (D. Colo. Sept. 30, 2015) (citing *Celotex Corp.*, 477 U.S. at 331). "The burden then shifts to the non-moving party to produce evidence demonstrating the existence of a genuine factual issue for trial." *Id.*

When the moving party does not bear the burden of persuasion at trial, the movant may satisfy its initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact "simply by pointing out to the court a lack of evidence . . . on an essential element of the nonmovant's claim." *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir.1998). If the movant carries this initial burden, the burden then shifts to the nonmovant "to go beyond the pleadings and set forth specific facts that would be admissible in evidence in the event of trial." *Id.* at 671 (quotation omitted).

"[A] 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). Whether there is a genuine dispute as to a material fact

depends upon whether the evidence presents a sufficient disagreement to require submission to a jury. *See Anderson,* 477 U.S. at 248-49; *Stone v. Autoliv ASP, Inc.,* 210 F.3d 1132, 1136 (10th Cir. 2000); *Carey v. U.S. Postal Serv.,* 812 F.2d 621, 623 (10th Cir. 1987). A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party. *Anderson,* 477 U.S. at 248. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (*citing First Nat'l. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

## III.   ANALYSIS

Plaintiff and Defendant have each moved for summary judgment on Claims Two and Three.  [## 97, 100]  Claims Two and Three both allege breaches of the Agreement. [#3 at 7-11]  Under Colorado Law, a breach of contract claim requires: (1) existence of a contract; (2) performance by the plaintiff; (3) failure to perform by the defendant; and (4) resulting damages. *Shell v. Am. Fam. Rights Ass'n*, 899 F. Supp. 2d 1035, 1058 (D. Colo. 2012) (citing *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992)).

Central to Claims Two and Three is whether ███████████████████████████ ████████████████████████████████  If it does not, Defendant's actions in bringing the KVA Lawsuit and the FAS Canada Lawsuit do not constitute a failure to perform under the Agreement, and Plaintiff cannot demonstrate the third element of its breach of contract claims.  The Court thus first addresses whether the ██████████████████████

11

███████████████████████████████ then addresses the parties' alternate arguments for

and against summary judgment on Claims Two and Three.

### A. Whether the Frac Shack Covenant Not to Sue extends to the Canadian '567 patent

The parties dispute whether the █████████████████████████████████████

███████████████ [##97 at 9-13; 100 at 9-17]  When interpreting contracts, "[t]he

primary goal . . . is to determine and give effect to the intent of the parties."[9]  *Vu, Inc. v.*

*Pac. Ocean Marketplace, Inc.*, 36 P.3d 165, 167 (Colo. App. 2001).  As the Colorado

Court of Appeals explained:

> Such intent is to be determined primarily from the language of the contract
> itself.  Written contracts that are complete and free from ambiguity will be
> found to express the intention of the parties and will be enforced according
> to their plain language.  Extrinsic evidence is only admissible to prove intent
> where there is an ambiguity in the terms of the contract.  Absent any
> ambiguity, a court must not look beyond the four corners of the agreement
> to determine the meaning intended by the parties.

*Id.* (citing *Ad Two, Inc. v. City & Cnty. of Denver*, 9 P.3d 373 (Colo. 2000)).

"The fact that the parties have different opinions about the interpretation of the

contract does not of itself create an ambiguity." *May v. United States*, 756 P.2d 362, 369

(Colo. 1988).  Instead, "[t]erms used in a contract are ambiguous when they are

susceptible to more than one reasonable interpretation." *Hecla Mining Co. v. N.H. Ins.*

*Co.*, 811 P.2d 1083, 1091 (Colo. 1991) "To determine whether a contractual provision is

ambiguous, 'the instrument's language must be examined and construed in harmony with

the plain and generally accepted meaning of the words employed, and reference must be

made to all of the provisions of the agreement.'" *Cornell v. Harmony Homes, Inc.*, No.

---

[9] As identified above, the Agreement ████████████████████████████████

████████ [#3-1 at 7]

06-cv-00323-EWN-MEH, 2007 WL 38132, at *4 (D. Colo. Jan. 4, 2007) (quoting *May*, 756 P.2d at 369). The Court must look to the entire document and may not "view[] clauses or phrases in isolation." *U.S. Fid. & Guar. Co. v. Budget Rent-A-Car Sys., Inc.*, 842 P.2d 208, 213 (Colo. 1992).

### 1. Whether the Agreement is Ambiguous

Pursuant to the Agreement and the ███████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████"[10]  [#100-2 at 3]  The ████████████████████████████████

████████



[*Id.* at 2]  The parties dispute the meaning of the phrase █████████████

████ in that definition.

Frac Shack contends that the definition only includes ███████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████  [#97 at 10]

FAS maintains that the phrase "██████████████████████████████████

████████████████████████████████████████████████████████████

---

[10] ████████████████████████████████████████████████████████

████████  [#100-2 at 3]

[#100 at 12]  This dispute is thus over the meaning of the phrase ███████████
████████ which is the same dispute that the Court dealt with in ruling on Frac Shack's
Motion to Dismiss.

In the Motion to Dismiss, Frac Shack argued that the phrase referred to foreign
patents that are "related by claiming priority *to* the enumerated patents and application."
[#14 at 20 (emphasis in original)]  And it is undisputed that the '567 patent does not claim
priority to any other patent, but instead the '662 patent and '906 patent claim priority to
the '567 patent.  [#120-1, SOF6, 10]  Thus, if Frac Shack's interpretation were correct—
that ███████████████████████████████████████████████████████████
████████████████—then the Agreement would not cover the '567 patent.

FAS, however, offers another interpretation.  In response to the Motion to Dismiss,
FAS argued that the phrase ███████████████████ includes all foreign patents
██████████████████████████████████ regardless of whether the
foreign patent claims priority to the identified United States patents or whether the
identified United States patents claim priority to the foreign patent.  [#21 at 17]  Thus,
according to FAS, because the '662 patent claims priority to the '567 patent, ████████
███████████████████████████████████████ [*Id.*]

As the Court found in the Motion to Dismiss, the Court finds that both parties'
interpretation of the meaning of the phrase ███████████████████████ is
reasonable and thus that the phrase is ambiguous.  [*See* #41 at 29]  The Court again
finds that "the plain and generally accepted meaning of the words employed" could
reasonably be interpreted to mean either: (1) ███████████████████████████
████████████████████████████████████████████

14

████████████████████████████████████████████████████

█████████████████████████████████████████████████.

And as the Court previously noted, the Agreement could have used clearer language to articulate either party's advocated definition. [*See id.* at 31]  To the extent FAS's interpretation is correct, the Agreement could have defined the ███████████

██████████████████████████████████████████████████████

███████████████████████████  To the extent Frac Shack's interpretation is correct, the Agreement could have defined the ███████████████████████

██████████████████████████████████████████████████████

████████████

Nothing in the parties' subsequent briefing on the instant Motions changes the Court's opinion.  Frac Shack argues that the Agreement explicitly intended for the parties to publicize the application to the United States patents but was silent as to the '567 patent.  [#97 at 11]  This factor may very well support Frac Shack's argument that the ███████████████████████████████████████████████  But, the Court cannot conclude that this detail eliminates the ambiguity above—especially when the Agreement could have easily excluded the '567 patent by █████████████████████

██████████████████████████████████████████████████████

████████████████████

Frac Shack also argues that the Agreement could have defined the █████████

███████████████████████████████  [*Id.*]  And Frac Shack is correct that this would have made the dispute unnecessary.  But, as explained above, the Agreement can be read to have included the '567 patent because █████████████████

███████████████████████ So, yes, the parties could have certainly made clear that the Frac Shack Patent Rights extended to the '567 patent by ███████████████ ███████████████████████ But, again, they could also have made clear that the '567 patent was not covered by that definition. The imprecise drafting language has created an ambiguity.

FAS's subsequent arguments likewise do not clarify the ambiguity. According to FAS, a patent holder will usually first file a patent application in its home country and then later file corresponding patent applications in other countries that are members of the Paris Convention. [#100 at 14-15] Because Frac Shack is a Canadian company, FAS posits that there is no "legitimate strategy in which Frac Shack could later file other foreign applications to claim priority to the U.S. applications" listed in the Frac Shack Patent Rights definition. [*Id.* at 15] Thus, Frac Shack's reading of the Agreement "would render meaningless the reference to foreign patent filings." [*Id.* at 15] This argument, however, is advanced without citation to any expert opinion and, in any event, entails analysis beyond the plain language of the Agreement. And, most importantly, this argument does not eliminate the ambiguity described above.

The Court finds that both parties' proposed interpretations are reasonable and thus that the language is ambiguous. The Court thus must turn to extrinsic evidence in an attempt to discern the parties' intent. *Cheyenne Mountain Sch. Dist. No. 12 v. Thompson*, 861 P.2d 711, 715 (Colo. 1993) ("Only after a contract is deemed ambiguous may the trial court use extrinsic evidence to assist it in ascertaining the intent of the parties.").

### 2. Extrinsic Evidence

Because the Court has determined that the Agreement is ambiguous, it turns to extrinsic evidence to assist in ascertaining the parties' intent.  *Id.*  This "interpretation becomes an issue of fact for the trial court to decide in the same manner as other disputed factual issues."  *Id.*  Thus, summary judgment is only appropriate where the admission of extrinsic evidence resolves all genuine issues of fact as to the parties' intent.  *Stroh Ranch Dev., LLC v. Cherry Creek S. Metro. Dist. No. 2*, 935 F. Supp. 2d 1052, 1055-56 (D. Colo. 2013).

Each side has submitted extrinsic evidence.  Frac Shack cites to the 2020 "Talking Points" document prepared by FAS's outside counsel, perhaps with the assistance of its in-house general counsel.  [#97 at 12-13 (citing #97-7)]  This document—prepared a year after the Agreement—states, in part: "[A]nyone who uses the FAS system in the United States through an agreement [with] FAS will be protected against an infringement claim by Frac Shack."  [##120-1, SOF33-34; 97-7]  But the document is silent as to the Agreement's application to Canada or other foreign markets.[11]  [*Id.*]  Given the nature of the document—a single page document containing eight short bullet points—the Court cannot conclude that the document leaves no genuine dispute as to the parties' intent

---

[11] The press release that the parties agreed to issue as part of the Agreement is likewise silent as to the global nature of the Agreement or the ██████████████████████  [#100-2 at 16]

concerning the application of the ████████████████████████████████████
██████████████.[12]

For its part, FAS points to the email communication during settlement discussions whereby FAS's counsel informed Frac Shack's counsel that he ██████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████ [#100 at 16 (quoting #100-17)]  But while Frac Shack's counsel agreed that the proposed ████████████████ he never agreed that the revisions established a global scope for the ████████████████ ██████████████████████████████.[13]  Moreover, the language proposed by FAS's counsel is not identical to the language in the final Agreement [*compare* #97-2 at 2-3, *with* #100-17 at 5] and FAS has not submitted any evidence indicating whether Frac Shack agreed that the ██████████████████████████ ████████████████████████████████████████████.

Thus, the Court finds that genuine issues of material fact exist as to the parties' intent with respect to the application of the ████████████████████████ ████████  Thus, there exists genuine issues of material fact as to whether Frac Shack breached the Agreement by suing FAS Canada or otherwise engaging FAS in the KVA

---

[12] Frac Shack also argues that the fact that the "parties never discussed the Canadian market in settlement discussions" supports its reading of the ██████████████████ ██████ [#97 at 12]  While perhaps technically correct, this statement is misleading.  As explained earlier, and discussed in more detail below, during settlement discussions FAS's counsel wrote to Frac Shack's counsel saying he ████████████████████ ████████████████████████████████████████████████████████████ ████████████████ [#100-17]  Thus, it is misleading to suggest that the parties never discussed a global (which would obviously include Canada) application of the Frac Shack Covenant Not to Sue.

[13] Indeed, as this Court explained above, the language is ambiguous.

Lawsuit.[14] Accordingly, because Plaintiff bears the burden of persuasion on this issue, Plaintiff's Summary Judgment Motion is DENIED.

### B. Whether Material Facts Exist as to the Other Elements of Plaintiff's Second and Third Claims

Though the Court concludes that genuine issues of material fact exist as to whether Frac Shack breached the Agreement by suing FAS Canada or otherwise engaging FAS in the KVA Lawsuit, Defendant, as the party that does not bear the burden of proof on any element of Plaintiff's claims, would still be entitled to summary judgment on Claims Two and Three if it could demonstrate that genuine issues of material fact do not exist as to any other element of those claims. In Defendant's Motion, Energera argues that Plaintiff cannot demonstrate damages, and therefore Energera is entitled to summary judgment on Claims Two and Three. [#97 at 14-17]

In response, Plaintiff asserts that it suffered damages through attorneys' fees it incurred as a result of the FAS Canada Lawsuit and the KVA Lawsuit. [#110 at 17-18] Frac Shack does not dispute the fact that FAS incurred attorneys' fees related to these two lawsuits,[15] but maintains that FAS cannot prove the reasonableness of such fees at trial because FAS has not disclosed an attorneys' fees expert.[16] [#120-1, SOF51; *see*

---

[14] Frac Shack also argues that FAS cannot demonstrate breach by suing KVA, as opposed to suing FAS directly. [#97 at 13-14] This Court has already rejected such a limited interpretation of the Frac Shack Covenant Not to Sue. [#81]

[15] In Defendant's Motion, Energera challenged whether Plaintiff could recover attorneys' fees incurred in the FAS Canada Lawsuit. [#97 at 16-17] Because it is undisputed that FAS incurred attorneys' fees in the KVA Lawsuit, and because Energera has not challenged FAS's ability to collect those fees—to the extent they are reasonable—the Court does not address whether Plaintiff can also recover attorneys' fees incurred in the FAS Canada Lawsuit.

[16] In Defendant's Motion, Energera acknowledged that Plaintiff had produced summaries of the attorneys' fees incurred by Plaintiff in monitoring the KVA Lawsuit, but challenged whether Plaintiff properly disclosed any witness with knowledge of those bills. [#97 at 16]

*also* #97 at 15]  The Colorado Court of Appeals, however, has rejected the argument that expert testimony is required to prove the reasonableness of attorneys' fees.[17]  *Parks v. Edward Dale Parrish LLC*, 452 P.3d 141, 147 (Colo. App. 2019) (finding that counterclaim defendant failed to "make any compelling argument that laypersons can't determine the reasonableness of the fees charged by an attorney without the help of an expert").  Accordingly, the Court finds that genuine issues of material fact exist as to whether Plaintiff suffered damages and Defendant is therefore not entitled to summary judgment on Claims Two or Three.  Accordingly, Defendant's Motion is DENIED.[18]

## IV.  CONCLUSION

For the foregoing reasons, **IT IS ORDERED**:

1.      Defendant Energera Inc.'s Motion for Summary Judgment [#97] is **DENIED**;

2.      Plaintiff's Motion for Partial Summary Judgment [#100] is **DENIED**; and

3.      The Clerk of Court shall file this Order under Restriction Level 1 and, within 14 days of the filing of this Order, the parties shall file a joint motion to restrict pursuant to D.C.COLO.LCivR 7.2 that attaches as an exhibit a proposed redacted version of the order reflecting both parties' proposed redactions.

---

Defendant can raise any alleged discovery violations through this Court's informal discovery process.

[17] In its Combined Response and Reply, Energera appears to concede this point stating that a "jury must decide the amount of reasonable attorney's fees, if any" and that a jury could determine that the amount sought by Plaintiff "is unreasonable in light of the circumstances."  [#115 at 13]

[18] In Defendants' Motion, Defendant also asks the Court to declare that Plaintiff is not entitled to certain declaratory relief sought in the Complaint.  [#97 at 13]  The Court declines to address this issue at this time but will take up the appropriate scope of any declaratory or injunctive relief if Plaintiff is ultimately successful at trial.

DATED: December 13, 2022        BY THE COURT:

s/Scott T. Varholak
United States Magistrate Judge